# BURTON *v.* UNITED STATES.

## ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

No. 343.  Argued November 30, December 1, 1904.—Decided January 16, 1905.

A Senator of the United States was indicted and tried in the Eastern District of Missouri for a violation of § 1782, Rev. Stat., the indictment averring that he had rendered services for a certain corporation before the Post Office Department in matters in which the United States was interested, that is, whether a "fraud order" should issue against such corporation, and that he had received payment at St. Louis therefor. The defendant denied that the United States was interested in the matters referred to in the indictment within the meaning of § 1782, Rev. Stat., or that he had rendered any service in violation thereof, and alleged that the services which he had rendered to, and had been paid for by, the corporation, were those of general counsel, and not connected with the "fraud order." It was proved without contradiction that the compensation he received under certain counts was sent to him from St. Louis and received by him in Washington in the form of checks on a St. Louis bank which he deposited in his bank in Washington, receiving credit therefor at once, and which checks were subsequently paid in due course. On the trial the jurisdiction of the court was denied, the offense, if any there was, having been committed at Washington and not at St. Louis, and the defendant also asserted his privilege from arrest under § 6, Art. I of the Constitution. The court held that the privilege from arrest was waived and submitted to the jury whether there was any agreement by which the place of payment of the checks was St. Louis and not Washington: *Held* that,

The facts alleged in the indictment showed a case that is covered by the provisions of § 1782, Rev. Stat.

Whether a Senator of the United States has waived his privilege from arrest and whether such privilege is personal only or given for the purpose of always securing a representation of his State in the Senate are not frivolous questions; and, if properly raised in the court below and denied, this court has jurisdiction to issue the writ of error directly to the District Court, and then to decide the case without being restricted to the constitutional question.

It is not the habit of this court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.

The deposit of checks in a bank and drawing against them by a customer constitutes the relation of debtor and creditor and the bank becomes the

absolute owner of the checks so deposited, and not the agent of the customer to collect them; this relation is not, in the absence of any special agreement, affected by the right of the bank against the customer, and his liability therefor, in case the checks are not paid.

The payment of the checks to defendant in this manner was a payment at Washington, and if any crime was committed it was not at St. Louis, and, in view of the evidence, it was error to submit to the jury any question as to where the payment was made, and those counts in the indictment which were based on allegations of payments in St. Louis should have been dismissed as the court had no jurisdiction thereover.

This is not the case of the commencement of a crime in one district and its completion in another so that the court in either district would have jurisdiction under § 731, Rev. Stat.

Certain of defendant's requests to charge which were allowed were referred to as mere abstract propositions of law and not otherwise specifically charged; after having been out thirty-eight hours the jurors returned and were instructed by the court in relation to their duty as jurors, and the foreman having stated in answer to questions of the court that they stood eleven to one, the court charged that it was their duty to agree if possible. Counsel then asked the court to instruct that defendant's requests to charge which had been allowed were as much a part of the charge as that which emanated from the court. This was refused. *Held:*

Error, and, under the circumstances of this case, it was a matter of right, and not of discretion, that the jury should be charged as to the character of the requests.

When a jury is brought before the court because unable to agree, it is not material for the court in order to instruct it as to its duty and the propriety of agreeing to understand the proportion of division of opinion, and the proper administration of the law does not require or permit such a question on the part of the presiding judge.

THE plaintiff in error having been convicted in the District Court of the United States for the Eastern District of Missouri of a violation of the Revised Statutes of the United States, sec. 1782, (1 U. S. Comp. Stat., p. 1212), and set forth in the margin,[1] has brought the case here directly from that court by writ of error.

---

[1] 1 U. S. Comp. Stat. 1212.

SEC. 1782. No Senator, Representative, or Delegate, after his election and during his continuance in office, and no head of a Department, or other officer or clerk in the employ of the Government, shall receive or agree to receive any compensation whatever, directly or indirectly, for any services rendered, or to be rendered, to any person, either by himself or another, in relation to any proceeding, contract, claim, controversy, charge, accusation,

The defendant was a member of the Senate of the United States, representing the State of Kansas. The indictment under which he was tried contained nine counts. The first count, after averring that the defendant was a Senator from the State of Kansas, averred that on the twenty-sixth day of March, 1903, he received at St. Louis, Missouri, from the Rialto Grain and Securities Company $500 in money, as compensation for his services theretofore on November 22, 1902, and on divers other days between that day and the twenty-sixth day of March, 1903, rendered for the company before the Post Office Department of the United States, in a certain matter then and there pending before that Department, in which the United States was directly interested, that is to say: Whether the company had violated the provisions of section 5480 of the Revised Statutes of the United States, in that the company had through its officers devised a scheme and artifice to defraud, which was to be effected through correspondence by means of the post office establishment of the United States, and whether the correspondence of the company at St. Louis, Mo., should not be returned with the word "Fraudulent" plainly written or stamped upon the outside, as authorized by law. It also averred that the services rendered by defendant to the company consisted in part of visits to the Postmaster General, the chief inspector, and other officers of the Post Office Department, and of statements made to the Postmaster General, the chief inspector, and other officers, which visits and statements made by the defendant were made with a view and for the purpose of inducing the Postmaster General, the chief inspector, and other officers to decide the question then pending before

---

arrest, or other matter or thing in which the United States is a party, or directly or indirectly interested, before any Department, court-martial, Bureau, office, or any civil, military, or naval commission whatever. Every person offending against this section shall be deemed guilty of a misdemeanor, and shall be imprisoned not more than two years, and fined not more than ten thousand dollars, and shall, moreover, by conviction therefor, be rendered forever thereafter incapable of holding any office of honor, trust, or profit under the Government of the United States.

the Post Office Department in a way favorable to the Rialto Company. The second count of the indictment was the same as the first, except that it averred the United States was "indirectly," instead of "directly," interested in. the question as to whether or not a "fraud" order should be issued. Upon the third count the jury rendered a verdict of not guilty. Upon the fourth and fifth counts the Government entered a *nolle prosequi.* The third, fourth and fifth counts concededly charged but one offense, which was the same. as that charged in the first and second counts, and all of these counts were based upon the payment of $500 in cash to defendant at St. Louis on the twenty-sixth of March, 1903. The sixth count averred the receipt by defendant at the city of St. Louis, in the State of Missouri, of a check for the payment of $500, which was received by. the defendant on the twenty-second of November, 1902, the check being drawn upon the Commonwealth Trust Company of St. Louis, payable to the order of the defendant and by him duly indorsed, and such check was paid by the trust company to defendant at St. Louis, as compensation for his services to the company between November 22, 1902, and March 26, 1903, before the Post Office Department, in a matter in which the United States was directly interested. The count then contained the same averments of the character of the question pending before the Post Office Department as are set forth in the first count. The seventh count is the same as the sixth, except that it averred the making of a check and the payment thereof to the defendant on December 15, 1902, at the city of St. Louis, in the State of Missouri, for the sum of $500; all other averments being the same as the sixth count. The eighth count averred the giving of a check for the sum of $500 on January 22, 1903, at the city of St. Louis, in the State of Missouri, in payment of services of the same nature as stated in the sixth and seventh counts. The ninth count is the same as the sixth, seventh and eighth, except that it averred the receipt of a check by the defendant, dated Ferbuary 16, 1903, at the city of St. Louis, in the State of Missouri, for the same

class of services and upon the same matter then pending before the Post Office Department. The defendant demurred to the indictment on the ground that it stated no crime, and that it showed that the United States had no interest, direct or indirect, in the matter before the Post·Office Department, inasmuch as the interest of the United States, under the statute, must be either a pecuniary or property interest, which may be favorably or unfavorably affected by action sought or taken in the given matter pending before the Department. The demurrer was overruled, and the defendant then pleaded not guilty.

*Mr. John F. Dillon* and *Mr. Frederick W. Lehmann,* with whom *Mr. Harry Hubbard, Mr. John M. Dillon* and *Mr. W. H. Rossington* were on the brief, for plaintiff in error:

The United States was not "directly or indirectly interested" in the question whether a fraud order should issue against the Rialto Grain and Securities Company; and, therefore, the court should have sustained the demurrer to the indictment, or should have granted the motion in arrest of judgment, or should have directed a verdict for defendant, and should not have instructed that the United States was "interested" as alleged in the indictment. For legislative history of Rev. Stat. § 1782, see Cong. Globe, Part I, 1st Sess., Debates on Sen. Bill 28, 38th Cong., 1863, 1864, pages 93, 460, 555, 559, 561, 714, 2773, and act as passed Ch. 119, Appx. Cong. Globe, 177.

Section 1782 does not say or mean things in which the people of the United States are interested, but things in which the United States, meaning the United States, as a Government, is interested.

The kind of interest of the United States which is meant in § 1782 is shown by the things which the statute specifically mentions, and the "other matters or things" referred to are matters or things in which the United States has a similar interest, under the principle of *ejusdem generis* and *noscitur a sociis.* Lord Tenterden's Rule, 21 Am. & Eng. Ency. of Law,

1012; *Alabama* v. *Montague,* 117 U. S. 602, 610. Such interest must be visible, demonstratable and capable of proof. *Northampton* v. *Smith,* 11 Metcalf, 390, 395; *McGrath* v. *People,* 100 Illinois, 464; *Evans* v. *Eaton,* 7 Wheat. 356; *State* v. *Sutton,* 74 Vermont, 12; *Foreman* v. *Marianna,* 43 Arkansas, 324; *Taylor* v. *Commissioners,* 88 Illinois, 526; *C., B. & Q. R. R. Co.* v. *Kellogg,* 54 Nebraska, 138; *Sauls* v. *Freeman,* 24 Florida, 209; *Bowman's Case,* 67 Missouri, 146.

Section 1782 is a criminal statute and is to be interpreted as such. The court should not seek to include therein anything not included unquestionably in the statute. *United States* v. *Wiltberger,* 5 Wheat. 76; *United States* v. *Sheldon,* 2 Wheat. 119; *United States* v. *Morris,* 14 Peters, 464; *United States* v. *Clayton,* 2 Dillon, 218.

There was no evidence establishing defendant's guilt as to any of the offenses charged in the indictment or of any offense whatever, and the court erred in refusing to direct a verdict of not guilty as to each count.

There was no testimony that the Senator had done anything violative of the statute in his Department or in the inconsequential supplemental talk. The testimony shows affirmatively that the charge that he tried to prevent the fraud order is not true. The letters and telegrams show that they had no reference to any fraud order.

The employment and actual services rendered by Senator Burton as general counsel had no relation to any matter charged in the indictment, and were not prohibited by § 1782, and were paid for by his monthly salary as general counsel.

The payments made by the four checks to Senator Burton were made in Washington and not in St. Louis, and the court in St. Louis had, under the Constitution, no jurisdiction of the alleged offenses based on the checks, as set forth in the sixth, seventh, eighth and ninth counts.

The four checks, when they were paid in St. Louis, belonged neither to Burton nor to the Riggs National Bank of Washington, but in the instance of each check to a subsequent in-

dorsee, which was the owner of the check, and payment to such subsequent indorsee was not payment either to Burton or to the Riggs Bank. Neither the Riggs Bank nor any other bank was agent of Burton. *Craigie* v. *Hadley*, 99 N. Y. 131; *Metropolitan National Bank* v. *Loyd*, 90 N. Y. 530; *Bank of Republic* v. *Millard*, 10 Wall. 152; *Thompson* v. *Riggs*, 5 Wall. 663; *Marine Bank* v. *Fulton Bank*, 2 Wall. 252; *Phœnix Bank* v. *Risley*, 111 U. S. 125; *Scammon* v. *Kimball*, 93 U. S. 362. *St. Louis &c. Ry. Co.* v. *Johnston*, 133 U. S. 566, distinguished.

The title to the check passed under commercial usage absolutely to the Riggs Bank and absolutely to each indorsee. The resolution of the New York Clearing House, June 4, 1896, had for its object to prevent indorsements "for collection" and to transfer absolute ownership. *Evansville Bank* v. *German American Bank*, 155 U. S. 556; *Commercial Bank* v. *Armstrong*, 148 U. S. 50.

If the Riggs National Bank of Washington was the agent of Burton to collect the checks, then the subsequent indorsees of said checks, if they were agents at all, were the agents of the Riggs National Bank and not of Burton. *Hoover* v. *Wise*, 91 U. S. 308, 313; *Exchange Bank* v. *Third Nat. Bank*, 112 U. S. 276, citing *Van Wart* v. *Woolley*, 3 B. & C. 439; *Tradesman's Bank* v. *Third National Bank*, 112 U. S. 293.

The court should have directed an acquittal as there was no proof of *venue*. *Stone* v. *State*, 105 Alabama, 60; *Randolph* v. *State*, 100 Alabama, 139; *Justice* v. *State*, 99 Alabama, 180; *Childs* v. *State*, 55 Alabama, 28; *Clark* v. *State*, 46 Alabama, 307. An indictment can be found only in that county in which the crime has been committed. Stephen, Dig. Law Crim. Proc. 47; *Rex* v. *Jones*, 6 C. & P. 137; 4 Black. Com. 303; 1 Chitty Crim. Law, 189; 2 Hale P. C. 163; 2 Hawk. P. C., Ch. 25, §§ 24, 35, 51; Const. U. S., Art. III, § 2, cl. 3, and 6th Amendment; Story on Const. § 1775; 2 Tucker, Const. 678; *Callan* v. *Wilson*, 127 U. S. 540; 12 Cyc. Law & Pro. 229, 239; Rev. Stat. § 731.

There can be no implied or constructive presence under the Constitution. *United States* v. *Burr*, 4 Cranch. Appx. 470.

The common law principle as to the local jurisdiction in respect of criminal offenses was adopted by the Constitution of the United States, substituting "State" and "State and district" for county.

The court erred in trying the defendant, a Senator of the United States, when the Senate was in session, and also, in pronouncing judgment and sentence of fine and imprisonment against him, to be executed at a time when the Senate was in session. Const. U. S., Art. I, § 6; Story, Const. §§ 856–862, and authorities there cited.

This immunity from arrest is not personal, but belongs to the office of Senator for the benefit of the Government, the State of Kansas and of his constituents, and the defendant could not waive it, even if he had consented or attempted to do so. The record shows no such waiver in fact or in law; and the court had no power to *try* the cause while the Senate was in session.

The defendant's supposed waiver, whatever its legal effect, could, in any event, extend no further than the period during which the defendant failed to set up his constitutional immunity, and after March 29, 1904, the court had no power to pronounce the judgment and sentence of April 6, 1904, the Senate being then in session.

The proceedings involve the Constitution, or application of the Constitution, within the meaning of § 5 of the act of March 3, 1891, and a writ will lie direct to this court. The trial and judgment are in conflict with the immunity of a Senator from imprisonment during the session. 2 Paterson Liberty of the Subject, 140, 188 *et seq.;* Rev. Stat. § 727; May's Const. Hist. II, ch. VII, 4th ed. 3, and ch. XI; 3 Stubb's Const. Hist. 538; Cooley's Const. Lim., 6th ed., 160; Jefferson's Parl. Man. § 3, on Privilege; Yonge's Const. Hist. 370; Lord Campbell's Speeches, 179; 2 Hardcastle's Life, 1 Campbell, 188. As to what a defendant in a criminal prosecution may waive, see

*Hopt* v. *Utah,* 110 U. S. 574, 579; *Thompson* v. *Utah,* 170 U. S. 343, 353; *Schick* v. *United States,* Harlan, J.'s, dissent, 195 U. S. 65.

Evidence was improperly admitted and the trial court did not by its charge and instructions to the jury cure the error which it made in the admission of improper evidence; but, on the contrary, confirmed such error. It also erred in its additional charge to the jury after they had come back for further instructions as well as in its original charge and instructions. First, in its instructions on propositions of law, and also in depriving the defendant of his constitutional right to have the question of his guilt of the charge laid in the indictment tried and decided by the jury. *United States* v. *Burr,* Appendix 4 Cranch. 470; and Second, in coercing the jury into rendering a verdict of guilty.

It is error to instruct so that the instruction implies that the court requires a conviction. *Hodges* v. *The State,* 15 Georgia, 117, 121.

*Mr. Solicitor General Hoyt* for the United States:

No constitutional question is presented or was saved so as to justify direct review in this court unless the court think fit to issue certiorari.

There are four important questions in the case: (1) Was there any proceeding pending before the Post Office Department in which the United States was interested? (2) Did the accused render services with the intent to influence the Department in such proceeding, and did he receive compensation therefor? (3) Did the trial court have jurisdiction? (4) Did the accused waive his privilege as Member of Congress, and was it competent for him to do so?

I. The power of Congress to legislate, and the authority of the Postmaster General under legislation are very broad, and the Postmaster General acts well within his established powers when he institutes a fraud order inquiry. Art. I, sec. 8, cl. 8, Constitution; §§ 396, 3929, 5480, Rev. Stat.; § 44, Postal Laws

and Reg.; *Public Clearing House* v. *Coyne*, 194 U. S. 497; *Bates & Guild Co.* v. *Payne*, 194 U. S. 106; *In re Rapier*, 143 U. S. 110.

No branch of any executive department more closely affects the people than the postal service and the United States is interested in a fraud order inquiry both because its revenue and property rights are affected, and because its intangible functions and responsibilities constitute an interest within the meaning of the law. The United States is vitally interested to protect the people against a fraudulent use of the mails, and to prevent the dissemination of the "literature" of a fraudulent scheme. As to the broad scope of the Government's "interest" as *parens patriæ*, see *United States* v. *Bunting*, 82 Fed. Rep. 883, 884; *Palmer* v. *Colladay*, 18 D. C. App. 426; *Tyner* v. *United States*, 32 Wash. Law Rep. 258; *Curley* v. *United States*, 130 Fed. Rep. 1, 3–9.

II. Under the proved facts as to services to the Rialto Company, especially when they are regarded together and consecutively, there can be no doubt that services were rendered and compensation received in violation of the statute.

III. The last payment was made in cash to the accused at St. Louis, and that is sufficient to sustain the judgment. *Claassen* v. *United States*, 142 U. S. 140; *Evans* v. *United States*, 153 U. S. 584, 595; *Goode* v. *United States*, 159 U. S. 669; *Putnam* v. *United States*, 162 U. S. 687; *Rice* v. *Ames*, 180 U. S. 371. But the counts on the checks are good. The Government proved a custom and usage prevailing in Washington of regarding such checks as collection items, although because of a customer's good standing immediate credit might be given, such items being subject to immediate charge back if returned unpaid. The checks were not purchased by the bank; they were collected for Burton and paid to him at St. Louis. This question of purchase or collection was submitted to the jury under proper instructions. *Ward* v. *Smith*, 7 Wall. 447; *Dodge* v. *Savings & Trust Co.*, 93 U. S. 379; *Evansville Bank* v. *German American Bank*, 155 U. S. 556, and cases cited;

*Scott* v. *Ocean Bank*, 23 N. Y. 289; *St. Louis & S. F. Ry. Co.* v. *Johnston*, 133 U. S. 566.    Authorities cited by plaintiff in error distinguished.

Section 731, Rev. Stat., supports the jurisdiction below, because at all events the offense as well as the process of payment was completed at St. Louis.    That statute is constitutional. *In re Palliser*, 136 U. S. 257; *Horner* v. *United States*, 143 U. S. 207; *Putnam* v. *United States*, 162 U. S. 687.    Where an offense is begun in one district and completed in another it can be tried in the latter district.

IV. The accused was not arrested.    That is the only privilege, exemption from arrest.    It applies only to arrests in civil proceedings and not to indictable offenses.    It was promptly waived.    It is purely personal and may be waived. Arts. of Confed., Art. V; Bill of Rights of 1689, Stubbs, Select Charters of Const. History, 2d ed., Oxford, Clarendon Press, pp. 523–525; Art. I, sec. 6, cl. 1, of the Constitution; *Coxe* v. *McClenachan*, 3 Dall. 478; 1 Bl. Com. 164, 165; Bowyer's Com. on Const. Law of England, 82–84; Hallam's Const. Hist., vol. III, pp. 379 *et seq.;* Salk. 505; *Stockdale* v. *Hansard*, 9 Ad. and El. 225; 1 Wm. & M. § 2, c. 2; 12 & 13 Wm. III, c. 3; 11 Geo. II, c. 24; 10 Geo. III, c. 50; 1 Jac. I, c. 13; Viner's Abridgment, vol. II, p. 36; *Bartlett* v. *Hebbes*, 5 Term Rep. 686; *Geyer's Lessee* v. *Irwin*, 4 Dall. 107; I Story on the Const. § 865.

This privilege is not like the right of trial by jury, which is a universal mandate to guard a system of jurisprudence and protect all the people, and therefore because of the public interest in the principle can only be waived and modified under certain peculiar conditions and situations.    *Hopt* v. *Utah*, 110 U. S. 574.    When there is no constitutional mandate and no public policy prohibiting, an accused may waive any privilege which he is given the right to enjoy.    *Schick* v. *United States; Broadwell* v. *United States*, 195 U. S. 65.    Constituents are interested in being represented in the legislature at all times during a session, but they are also interested in being properly

represented, and a man under indictment is not fit to represent them. The public is thus interested in having the privilege waived and the charge determined as promptly as possible. Waiver is requisite for another reason; it is an unwritten law of the Senate that it refrains from action within its own power to discipline or expel, provided only that a member under indictment does not appear in the Senate while such charge in the courts is undetermined in his favor. In that case two courses only are open, either to waive the privilege and proceed to trial on the member's initiative, or else resign and give the electors the opportunity to select a fit representative.

Mr. Justice Peckham, after making the foregoing statement of facts, delivered the opinion of the court.

Counsel for defendant base their right to obtain a direct review by this court of the judgment of conviction in the District Court of Missouri upon the contention that the case involves the construction and application of the Constitution of the United States in several particulars. They insist that under Article 3, section 2, of the Constitution, and also under the Sixth Amendment of the same, the defendant was entitled to be tried by a jury of the State or district in which the crime alleged against him in the indictment was committed. This question arises by reason of those counts of the indictment which charge the receipt by defendant of various checks therein set forth, at St. Louis, in the State of Missouri, while the evidence in the case shows, without contradiction, that the checks were received in the city of Washington, D. C., and payment thereof made to defendant by one of the banks of that city. Counsel contended that if any crime were committed by the receipt of these checks and the payment thereof to the defendant (which is denied), that crime was committed in Washington and not in Missouri, and that it did not come within section 731 of the Revised Statutes of the United States, pro-

viding that when an offense against the United States is begun in one judicial circuit and completed in another it shall be deemed to have been committed in either, and may be dealt with, etc., in either district, in the same manner as if it had been actually and wholly committed therein.  Counsel for defendant also contend that the case involves the construction and application of section 6 of Article I of the Constitution of the United States, providing that Senators and Representatives shall, in all cases except treason, felony and breach of the peace, be privileged from arrest during their attendance at the sessions of their respective houses and in going to and return-ing from the same.  These questions were raised in the court below.  Whether the defendant waived his alleged privilege of freedom from arrest as Senator would probably depend upon the question whether the offense charged was in substance a felony, and if so, was that privilege a personal one only, and not given for the purpose of always securing the representation of a State in the Senate of the United States.  However that may be, the question is not frivolous, and in such case the statute grants to this court jurisdiction to issue the writ of error directly to the District Court, and then to decide the case without being restricted to the constitutional question.  *Horner* v. *United States, No. 2,* 143 U. S. 570.  It is not the habit of the court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.  Having jurisdiction to decide all questions in the case on this writ of error, we deny the motion for a certiorari, and proceed to an examination of the record.

First.  The question of the construction of the statute upon which this indictment was framed is the first to arise.  Upon that question a majority of the court (Mr. Justice Harlan, Mr. Justice Brown, Mr. Justice McKenna, Mr. Justice Holmes and Mr. Justice Day concurring) are of opinion that the facts alleged in the indictment show a case that is covered by the provisions of the statute, while the Chief Justice, Mr. Justice Brewer, Mr. Justice White and the writer of this opinion

dissent from that view, and are of opinion that the statute does not cover the case as alleged in the indictment.

Second. Assuming that the statute applies to the facts stated in the indictment, a further question arises upon the general merits of the case, whether there was sufficient evidence of guilt to be submitted to the jury, and a majority of the court (the same Justices concurring) are of opinion that there was, or are not prepared to say there was not, and the same minority dissent from that view and are of opinion that there was no evidence whatever upon which to found a verdict of conviction.

There are, however, other questions remaining, which we now proceed to discuss on the theory that the statute covers the case.

Third. The sixth, seventh, eighth and ninth counts of the indictment aver the receipt by the defendant of the different checks described, at the city of St. Louis, in the State of Missouri, and the payment of the money thereon to the defendant at St. Louis, in that State, as compensation for services theretofore performed by the defendant for the Rialto Company. It may be assumed that on the facts averred in these various counts in the indictment upon the checks, each of them was good. It turned out, however, on the trial that these averments of the place where the different checks were received and paid were not true; but, on the contrary, the evidence was wholly undisputed that each of them was received by the defendant in the city of Washington, D. C., and by him there indorsed and deposited with the Riggs National Bank of Washington, D. C., and that they were afterwards duly paid by the Commonwealth Trust Company at St. Louis, Missouri; that the amount of each was in each instance immediately credited by the Riggs National Bank to the account of the defendant with the bank, and the cashier testified that the defendant had the right, immediately after the credit was made, to draw out the whole, or any portion thereof, without waiting for the payment of the check at St. Louis.

There was no oral or special agreement made between the defendant and the bank at the time when any one of the checks was deposited and credit given for the amount thereof. The defendant had an account with the bank, took each check when it arrived, went to the bank, indorsed the check which was payable to his order, and the bank took the check, placed the amount thereof to the credit of the defendant's account, and nothing further was said in regard to the matter. In other words, it was the ordinary case of the transfer or sale of the check by the defendant and the purchase of it by the bank, and upon its delivery to the bank, under the circumstances stated, the title to the check passed to the bank and it became the owner thereof. It was in no sense the agent of the defendant for the purpose of collecting the amount of the check from the trust company upon which it was drawn. From the time of the delivery of the check by the defendant to the bank it became the owner of the check; it could have torn it up or thrown it in the fire or made any other use or disposition of it which it chose, and no right of defendant would have been infringed. The testimony of Mr. Brice, the cashier of the Riggs National Bank, as to the custom of the bank when a check was not paid, of charging it up against the depositor's account, did not in the least vary the legal effect of the transaction; it was simply a method pursued by the bank of exacting payment from the indorser of the check, and nothing more. There was nothing whatever in the evidence showing any agreement or understanding as to the effect of the transaction between the parties—the defendant and the bank—making it other than such as the law would imply from the facts already stated. The forwarding of the check "for collection," as stated by Mr. Brice, was not a collection for defendant by the bank as his agent. It was sent forward to be paid, and the Riggs Bank was its owner when sent. With reference to the jurisdiction of the court over the offense described in the sixth and following counts in the indictment, the court held that if the checks were actually received by the defendant in Washington and

the money paid to him by the bank in that city, and the title and ownership of the checks passed to the bank at that time, the court in Missouri had no jurisdiction to try the offense set forth in those counts of the indictment already referred to. There was no question that such was the fact, and it was error to submit the matter to the jury to find some other fact not supported by any evidence. The court said:

"The Government claims that the compensation referred to in this count was sent to the accused by the Rialto Grain and Securities Company, in the form of a check, drawn by it on the Commonwealth Trust Company, payable to the order of the accused, by mail; that he received the check representing this compensation at Washington, in the District of Columbia, and then and there indorsed the check, deposited it to his own credit in the Riggs National Bank at Washington; that the last mentioned bank afterwards forwarded the check by and through its correspondents to St. Louis for payment by the Commonwealth Trust Company, upon which it was drawn, and that the Riggs Bank and its correspondents in all this matter became and were the agents of the accused for securing this money, and when the money called for by the check was finally paid at St. Louis, Missouri, by the trust company, on which it was drawn, it amounted to a payment of that money to the accused at St. Louis, Missouri. This suggests an important feature of the case, for the reason that unless it be true that the accused received the money represented by and paid on this check at St. Louis, this court would have no jurisdiction to try the case."

"The Constitution of the United States confers upon the accused in every criminal case the right to be tried by an impartial jury of a State and district where the crime shall have been committed.

"The receipt of the money is the gist of the crime charged against the accused, and if he did not receive it in this district, in fact in St. Louis, where he is charged to have received it, he is not amenable to the law in this district, and cannot be con-

victed in this court on this sixth count. Accordingly, it becomes your duty to ascertain and find from the evidence what were the true relations between the accused and the Washington bank, when he deposited the check in question with that bank, and what was the understanding between them as to their respective rights in relation to the check and the proceeds thereof. On this question the court charges you as follows:

"If it was the intent and understanding of the Washington bank and the accused at the time the latter deposited the check in question with the former, that the bank should forward the same in the usual course by and through its correspondents to St. Louis, for payment, and that in so doing it and its correspondents should act only as the agents of the accused for that purpose, then the final payment by the Commonwealth Trust Company at St. Louis, of the check to the correspondents of the Washington bank, would amount in law to a payment in St. Louis as charged in the sixth count, of the amount of the check to the accused. If on the contrary it was the understanding and intent of the Washington bank and the accused at the time the latter deposited the check in question with the former that the bank should become the purchaser of the check, and should thereafter be the absolute owner thereof, and not act as just indicated, as the agent of the accused in the collection of the check, then the payment at St. Louis by the Commonwealth Trust Company would amount in law to a payment to the Washington bank and not to the accused. In the latter event no crime would have been committed by the accused in this district, by reason of the check referred to in the sixth count of the indictment.

"In order to find the accused guilty on the sixth count, you must find from the evidence, by the same measure of proof as is required in all criminal cases, that the check referred to in the sixth count was deposited by the accused in the Washington bank for collection, and that the bank was to act in collecting the same, as the agent of the accused, and not as the owner of the check in question.

"In determining this issue, you are at liberty to and should consider all the evidence adduced; the actual transaction as it occurred at the Riggs Bank where the check was deposited, the check itself and all its endorsements, the rights and privileges which were immediately accorded the accused upon making the deposit, the actual conduct and purpose of the Riggs Bank in forwarding the check to St. Louis for payment, the customary conduct and usage of that bank, and all banks in Washington at the time so far as shown by the proof. And if from all these facts and all other facts disclosed by the proof you find that the check in question was in fact deposited by the accused, with the intent and knowledge on his part, as well as on the part of the bank itself, that it should be forwarded to St. Louis for collection for account of the accused, the bank and its correspondents acting as agents for the accused to make such collection, you should find that when the same was actually paid to the last indorser on the check at St. Louis by the trust company upon which it was drawn, it was in contemplation of law paid to the accused himself.

"If on the contrary you find from the evidence that the accused and the Riggs Bank, at the time of the deposit of the check in question, understood and intended that the bank should become the purchaser of the check and be its absolute owner, then the subsequent forwarding of it to St. Louis for payment was the act of the bank itself, and the final payment of the check by the trust company at St. Louis was a payment not to the accused, but to the bank, and if such is the fact your verdict on the sixth count must be not guilty."

A careful scrutiny of the evidence with relation to this charge to the jury shows that there was no foundation for submitting to the jury the question of what was the understanding (other than such as arose from the transaction itself, as shown by uncontradicted evidence) between the defendant and the bank at the time when these various checks were deposited with the bank and their proceeds placed to the credit of the defendant. There was no agreement or understanding of any kind other

than such as the law makes from the transaction detailed, which was itself proved by uncontradicted evidence offered by the Government itself. In the absence of any special agreement that the effect of the transaction shall be otherwise (and none can be asserted here), there is no doubt that its legal effect is a change of ownership of the paper, and that the subsequent action of the bank in taking steps to obtain payment for itself of the paper which it had purchased can in no sense be said to be the action of an agent for its principal, but the act of an owner in regard to its own property. The learned judge in his charge to the jury did not, indeed, deny the general truth of this proposition, but he left it to the jury to determine whether there was not an agreement or understanding made or arrived at by the parties at the time the checks were taken by the defendant to the bank, which altered the legal effect of the transaction actually proved. This, as we have said, there was not the slightest evidence of, and it was error to submit that question to the jury.

The general transactions between the bank and a customer in the way of deposits to a customer's credit and drawing against the account by the customer constitute the relation of creditor and debtor. As is said by Mr. Justice Davis, in delivering the opinion of the court in *Bank of the Republic* v. *Millard*, 10 Wall. 152, in speaking of this relationship, page 155:

"It is an important part of the business of banking to receive deposits, but when they are received, unless there are stipulations to the contrary, they belong to the bank, become part of its general funds, and can be loaned by it as other moneys. The banker is accountable for the deposits which he receives as a debtor, and he agrees to discharge these debts by honoring the checks which the depositors shall from time to time draw on him. The contract between the parties is purely a legal one, and has nothing of the nature of a trust in it. This subject was fully discussed by Lords Cottenham, Brougham, Lyndhurst and Campbell in the House of Lords in the case of

*Foley* v. *Hill*, 2 Clark & Finnelly, 28, and they all concurred in the opinion that the relation between a banker and customer, who pays money into the bank, or to whose credit money is placed there, is the ordinary relation of debtor and creditor, and does not partake of a fiduciary character, and the great weight of American authorities is to the same effect."

When a check is taken to a bank, and the bank receives it and places the amount to the credit of a customer, the relation of creditor and debtor between them subsists, and it is not that of principal and agent. This principle is held in *Thompson* v. *Riggs,* 5 Wall. 663, and also in *Marine Bank* v. *Fulton Bank*, 2 Wall. 252. See also *Scammon* v. *Kimball*, 92 U. S. 362, 369; *Davis* v. *Elmira Savings Bank*, 161 U. S. 275, 288.

The case of *Cragie* v. *Hadley*, 99 N. Y. 131, contains a statement of the rule as follows, per Andrews, J.:

"The general doctrine that upon a deposit made by a customer, in a bank, in the ordinary course of business, or of money, or of drafts or checks received and credited as money, the title to the money, or to the drafts or checks, is immediately vested in and becomes the property of the bank, is not open to question. (*Commercial Bank of Albany* v. *Hughes*, 17 Wend. 94; *Metropolitan Nat. Bank* v. *Loyd*, 90 N. Y. 530.) The transaction in legal effect is a transfer of the money, or drafts or checks, as the case may be, by the customer to the bank, upon an implied contract on the part of the latter to repay the amount of the deposit upon the checks of the depositor. The bank acquires title to the money, drafts or checks, on an implied agreement to pay an equivalent consideration when called upon by the depositor in the usual course of business."

In *Metropolitan Nat. Bank* v. *Loyd*, 90 N. Y. 530, one of the cases referred to by Judge Andrews, Judge Danforth, in speaking of the effect of placing a check to the credit of a depositor in his account with the bank, said that—

"The title passed to the bank, and they (the checks) were not again subject to his control. [See *Scott* v. *Ocean Bank in*

*City of New York,* 23 N. Y. 289, and other cases cited in the opinion.]

\*   \*   \*   \*   \*   \*   \*   \*

"It is true no express agreement was made transferring the check for so much money, but it was delivered to the bank and accepted by it, and the bank gave Murray credit for the amount, and he accepted it. That was enough. The property in the check passed from Murray and vested in the bank. He was entitled to draw the money so credited to him, for as to it the relation of debtor and creditor was formed, and the right of Murray to command payment at once was of the very nature and essence of the transaction. On the other hand, the bank, as owner of the check, could confer a perfect title upon its transferee, and, therefore, when by its directions the plaintiff received and gave credit for it upon account, it became its owner and entitled to the money which it represented. . . . If, as the appellant insists, the check had been deposited for a specific purpose—for collection, the property would have remained in the depositor, but there is no evidence upon which such fact could be established, nor is it consistent with the dealings between the parties, or with any of the admitted circumstances.

"These show that it was the intention of both parties to make the transfer of the check absolute, and not merely to enable the bank to receive the money upon it, as Murray's agent."

The same principle is set forth in *Taft* v. *Bank,* 172 Massachusetts, 363. In that case the court said: "So when, without more, a bank receives upon deposit a check endorsed without restriction, and gives credit for it to the depositor as cash in a drawing account, the form of the transaction is consistent with and indicates a sale, in which, as with money so deposited, the check becomes the absolute property of the banker."

In the case at bar the proof was not disputed. The checks were passed to the credit of defendant unconditionally, and without any special understanding. The custom of the bank

to forward such checks for collection is a plain custom to forward for collection for itself. The only liability of defendant was on his indorsement. All this made a payment at Washington, and as a result there was a total lack of evidence to sustain the sixth, seventh, eighth and ninth counts of the indictment. The court should have, therefore, directed a verdict of not guilty on those counts.

This is not a case of the commencement of a crime in one district and its completion in another, so that under the statute the court in either district has jurisdiction. Rev. Stat. sec. 731; 1 Comp. Stat. p. 585. There was no beginning of the offense in Missouri. The payment of the money was in Washington, and there was no commencement of that offense when the officer of the Rialto Company sent the checks from St. Louis to defendant. The latter did not thereby begin an offense in Missouri.

Fourth. The judgment must also be reversed because of the error in the refusal of the court to charge as requested when the jury came into court and announced an inability to agree. Previous to the retirement of the jury the defendant's counsel submitted to the court certain requests to charge the jury, twelve in all. Those numbered seven, ten and eleven were refused. Numbers ten and eleven referred to the checks and the effect of the transaction of depositing them with the Riggs Bank. The other instructions referred to many of the questions arising in the case, and material upon the subject of the trial then before the court. After the court had concluded his main charge to the jury he added that he had been "asked by counsel for the defendant to give certain declarations here, and while I think they have, in the main, been covered by the charge, yet I will give them to you." (They were the instructions requested by defendant and above described.) "These are abstract propositions of law, which I give in connection with the charge, as perhaps more fully amplifying it. I am willing to give them, inasmuch as they are asked, and they contain general propositions of law." The jury then retired,

and after being out from Saturday evening at 8 o'clock until the following Monday morning at 10 o'clock without agreeing, returned into court and were charged by the court in relation to their duty as jurors. In the course of that charge the court said to the jury as follows:

"I gather from this letter, Mr. Foreman, what I may be incorrect about. I would like to ask the foreman of the jury how you are divided. I do not want to know how many stand for conviction, or how many for acquittal, but to know the number who stand the one way and the number who stand another way. I would like the statement from the foreman.

"The FOREMAN: Eleven to one.

"The COURT: The jury stand eleven to one. I gather that from the communication. In the light of that fact I feel constrained to make a statement to you, and in making it to use the language of the Supreme Court of the United States as found in Allen v. United States." (164 U. S. 492.)

The court then charged the jury in relation to its duty to agree if possible, and directed that the jury should, in the light of the comments of the court then made, retire and make a serious attempt to arrive at a verdict in the case. Counsel for the defendant then asked the court to indicate to the jury that the requests to charge theretofore, asked by the defendant and which were given by the court, constitute as much a part—

"The COURT: If you will wait a moment the jury may retire.

"Mr. KRUM: I beg your Honor to state to the jury—

"The COURT: Stop a moment and then I will hear your argument. I will, after the jury retire, hear counsel if they have anything to say, or any exceptions they may wish to take to the charge." The court here handed the foreman of the jury the charge and instructions heretofore referred to and directed the jury to retire for further consideration of their verdict.

"Mr. LEHMAN: I do not believe that the requests to charge in the manner made by defendant and given by the court to the jury, were given as they should have been, the suggestions being made by the court at the time, that they were mere ab

stract statements, which had the effect to deprive them of
something of their force, when they were not intended as mere
abstractions and were believed by counsel to have specific
reference to the case; and those instructions as well as others
ought to be called to the attention of the jury. We must ex-
cept here as earnestly as it is in our power to do, against the
charge of the court made now.

"The COURT: If you except, I will allow the exception.

"Mr. KRUM: What I desire to do in the presence of the jury
was to ask your Honor to indicate to the jury, as it was evident
the jury did not understand, that it was a fact that the re-
quests to charge which were recognized by the court, ac-
quiesced in by the court and given by the court, were just as
much a part of your Honor's charge as that which the court
read as emanating from the court itself.

"The COURT: I did tell the jury so on Saturday.

"Mr. KRUM: I submit it is apparent that they do not under-
stand that they are just as much to be controlled by that part
of the instructions as any other part. That is evident from
the inquiry made.

"The COURT: The court has endeavored to answer the only
request made by the jury, and that is all I think should be
done."

We think the court should have instructed the jury as re-
quested by counsel for the defendant, and that its refusal to
do so was error. Here was a case of very great doubt in the
minds of some of the jury. It had deliberated for more than
thirty-six hours and been unable to agree upon a verdict. The
requests to charge originally made by counsel for defendant
had at that time been received as abstract propositions of law,
which the court gave in connection with the charge, saying
that he was willing to give them inasmuch as they were asked,
and as they contained general propositions of law. It does
not appear from the bill of exceptions that defendant's counsel
then excepted to those remarks by the court, but when the
jury subsequently returned into court and announced their

inability to agree, counsel for defendant immediately saw the extreme importance of having the requests to charge made to the court regarded by the jury, not as abstract or general propositions of law, but as requests which affected the case then on trial with reference to the facts proved in the case; and so, before the jury again retired, they commenced to propound their requests upon the subject to the court, but the court before listening to them instructed the jury to retire, and then followed the colloquy above set forth between court and counsel.

Balanced as the case was in the minds of some of the jurors, doubts existing as to the defendant's guilt in the mind of at least one, it was a case where the most extreme care and caution were necessary in order that the legal rights of the defendant should be preserved. Considering the attitude of the case as it existed when the jury returned into court for further instructions, we think the defendant was entitled, as matter of legal right, to the charge asked for in regard to the previous requests to charge, which had been granted by the court under the circumstances stated, and it was not a matter of discretion whether the jury should, or should not, be charged as to the character of those requests. A slight thing may have turned the balance against the accused under the circumstances shown by the record, and he ought not to have longer remained burdened with the characterization of his requests to charge, made by the court, and when he asked for the assertion by the court of the materiality and validity of those requests which had already been made, the court ought to have granted the request.

We must say in addition, that a practice ought not to grow up of inquiring of a jury, when brought into court because unable to agree, how the jury is divided; not meaning by such question, how many stand for conviction or how many stand for acquittal, but meaning the proportion of the division, not which way the division may be. Such a practice is not to be commended, because we cannot see how it may be material

for the court to understand the proportion of division of opinion among the jury. All that the judge said in regard to the propriety and duty of the jury to fairly and honestly endeavor to agree could have been said without asking for the fact as to the proportion of their division; and we do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge. Cases may easily be imagined where a practice of this kind might lead to improper influences, and for this reason it ought not to obtain.

· Our conclusion is, that the judgment must be reversed and the cause remanded to the District Court of Missouri with directions to grant a new trial.

*So ordered.*

Mr. Justice Harlan, dissenting.

I dissent from so much of the opinion and judgment as holds that the offenses charged against the defendant, based on the checks made at St. Louis and mentioned in the sixth, seventh, eighth and ninth counts, were committed in this District, where the checks were received by him, and not at St. Louis, where they were paid by the bank on which they were drawn for his benefit. I am of opinion that the Riggs National Bank, upon receiving the checks from the accused, became, in every substantial sense, his agent and representative to present the checks and receive the proceeds thereof; in which case, the offense of receiving, by means of those checks, compensation for services rendered in violation of the statute was committed at St. Louis, not at Washington. In a strict sense, no title or ownership of the checks passed to the Riggs National Bank, as in the case of an unconditional sale, consummated by actual delivery, of tangible, personal property for the recovery of the possession of which the owner could, of right, maintain an action in his own name; for, if the St. Louis bank on which the checks were drawn had refused to accept or honor them, no ·

action on the checks, or at all, could have been maintained against it by the Riggs National Bank.  *Bank of Republic* v. *Millard,* 10 Wall. 152, 156; *First National Bank* v. *Whitman,* 94 U. S. 343, 344; *St. Louis &c. Railway* v. *Johnston,* 133 U. S. 566, 574; *Fourth Street Bank* v. *Yardley,* 165 U. S. 634, 643. The checks were made at St. Louis and sent by mail from that city to the accused in discharge of an obligation assumed by his client at that city, and, as between him and his client, in the absence of any special agreement on the subject, compensation for services rendered by him before the Department could only be deemed to have been really made when the checks were paid by the bank on which they were directly drawn.   It is true that when the Riggs National Bank received the checks and credited the account of the accused on its books with the amount thereof, there arose, as between that bank and him, only the relation of debtor and creditor.   But when his account at that bank was so credited, he became liable, by implied contract—if the St. Louis bank failed to accept or pay the check when presented—to pay back to the bank an amount equal to the credit he received on the books of the Riggs National Bank.   If the St. Louis bank had refused to accept or pay the checks when presented, and if the accused had then sued his client on its original contract with him, the latter could not have resisted recovery upon the ground that he received compensation by having his account at the Washington bank credited with the amount of the checks.   Suppose the accused had been indicted in Washington on the day after the checks were indorsed to the Riggs National Bank, and the checks were not honored or paid when presented at the St. Louis bank, could he in that case have been convicted under the statute by proof that he received such credit at the former bank for the amount of the checks?   Clearly not.   Yet he could have been, if it be true that he was compensated, within the meaning of the statute, when his account with the Riggs National Bank was credited with the amount of the checks.   As between the accused and his client, he was not, in any true

sense, compensated for the services alleged to have been rendered in violation of the statute, until by payment of the checks by the St. Louis bank he was relieved of all liability to the Riggs National Bank arising from his indorsing the checks to it. The accused is to be regarded as having received, at St. Louis, compensation for his services, because the check made in his behalf was paid there to his representative. The offense was, therefore, consummated at that city, and the Federal Court at St. Louis had jurisdiction.

Nor, in my opinion, does the record show any error, in respect of instructions that were to the substantial prejudice of the accused; no error for which the judgment should be reversed.

It seems to me that in reversing the judgment upon the grounds stated in the opinion the court has sacrificed substance to mere form. The result, I submit, well illustrates the familiar maxim: *Qui haeret in litera haeret in cortice.*