# VIRGIN ISLANDS AUTOMOBILE RENTAL ASSOCIATION, Plaintiff
## v.
# VIRGIN ISLANDS PORT AUTHORITY, Defendant

Civil No. 2001-130

District Court of the Virgin Islands

Division of St. Thomas and St. John

June 30, 2006

WILLIAM J. GLORE, ESQ., St. Thomas, U.S.V.I., *For the plaintiff.*

HENRY V. CARR, III, ESQ., St. Thomas, U.S.V.I., *For the defendant.*

GOMEZ, *Judge*

## MEMORANDUM OPINION

(June 30, 2006)

Before the Court is the motion of the Virgin Islands Automobile Rental Association ("VIARA") for summary judgment against the Virgin Islands Port Authority ("VIPA").

### I. FACTUAL AND PROCEDURAL BACKGROUND

The relevant facts that attend VIARA's motion are undisputed. They are outlined below.

VIPA is a public corporation. It is charged with the management of the Cyril E. King Airport on St. Thomas ("King") and the Henry E. Rohlsen Airport[1] on St. Croix ("Rohlsen"). V.I. CODE ANN. tit. 29, § 543(12).

VIARA is a not-for-profit trade association whose membership includes a majority of the small, independent rental car businesses operating in the United States Virgin Islands. Most of its member companies are not located at either of the airports in the United States Virgin Islands. VIARA's off-island customers contract with VIARA's member companies for rental car services via telephone, email, and other

---

[1]   This airport was formerly named the Alexander Hamilton Airport.

methods of interstate or international communication. VIARA's members provide complimentary pick-up service from both King and Rohlsen Airports to VIARA's members' places of business.

On December 29, 1986, the Virgin Islands Legislature enacted the Virgin Islands Taxi Franchise Law, Legislative Act No. 5231. Act of Dec. 29, 1986, No. 5231(1)(a), 1986 V.I. Session Laws 390-396 (hereinafter "Act 5231" or the "Act"). The Act grants the Virgin Islands Taxi Association ("VITA") an exclusive franchise "to operate all public taxicab service" from the terminal at King Airport. It also grants the St. Croix Taxicab Association ("SCTA") the exclusive franchise to operate "all public taxicab service" from the Rohlsen Airport terminal. The Act grants the franchisees the specific authority:

> to transport all persons from the terminal area [of King and Rohlsen airports] except those departing by foot, by privately owned motor vehicle where no fee is charged, by motor vehicle furnished by a [rental car agency located] at the terminal facility or by a motor vehicle owned, operated, or utilized by a tour agent in the transportation of passengers traveling on a prepaid or packaged tour, which has a minimum price of $50 and includes either lodging or transportation on an ocean common carrier; provided that transportation from the terminal facility is part of the overall transportation arranged for in the prepaid or packaged tour.

*Id.* at 1(e).

The franchisees may not prevent any taxicab "lawfully engaged in the taxicab business in the Virgin Islands" from entering the terminal facility at either airport. *Id.* at 1(d). Additionally, VITA and SCTA must "provide a variety of licensed taxicabs ... not less than 40 in number, on a daily basis" at both Rohlsen and King Airports. *Id.* at 1(q). The Act further provides that the "franchise shall be strictly construed and shall *not* include the right to conduct a motor vehicle rental (drive yourself) business or any other business ... not included in this act." *Id.* at 1(c) (emphasis added). VIPA is charged with enforcing the Act's provisions. V.I. CODE ANN. tit. 29, § 543(12).

On April 11, 2001, VIPA issued a notice to certain VIARA members indicating that, pursuant to its authority under the Act, VIPA would begin preventing VIARA's members from offering complimentary transportation from Rohlsen Airport. VIPA also issued an order to its

enforcement unit indicating that it would "strictly enforce the Taxi Franchise Law:"

> This means that: 1) No off property car rental agency or representative may pickup passenger [sic] and/or write car rental contracts on airport property. Airport property means airport terminal, (Parking Lot) curb-side, across the road on the road shoulders, in front of the airport from the east airport road to the west airport road.

(Compl. Ex. 2.) The order also instructed VIPA's police unit to "boot[] ... [p]re-positioned off property Rental Cars." (*Id.*)

On June 24, 2001, VIARA filed a complaint in this Court seeking a declaration that the complimentary rides that VIARA's members provide to their customers is not subject to regulation by VIPA. VIARA also seeks a declaration that VIPA's enforcement actions constitute an unconstitutional restraint on interstate commerce. Thereafter, VIARA filed the present motion for summary judgment.

VIARA argues that summary judgment is appropriate because VIARA's members are not subject to Act 5231's proscriptions as a matter of law. VIARA argues that the vehicles its members use are privately owned and therefore fall under the "privately owned motor vehicle" exception to the Act. Act 5231 § 1(e). Alternatively, VIARA argues that Act 5231 is an unconstitutional restraint on interstate commerce as applied to VIARA's members and must be struck down.

VIPA counters that VIARA's members cannot escape Act 5231's restrictions through the "privately owned motor vehicle" clause.

## II. DISCUSSION

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue respecting any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (explaining summary judgment standards). The nonmoving party may not rest on mere allegations or denials, but must establish by specific facts that there is a genuine issue for trial from which a reasonable juror

could find for the nonmovant. *Saldana v. Kmart Corp.*, 84 F. Supp. 2d 629, 631-32, 42 V.I. 358 (D.V.I. 1999).

Congress has given courts the power to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201; *see also* FED. R. CIV. P. 57 (creating procedure for declaratory judgments). Whether to issue a declaratory judgment is a matter of discretion for the Court. *Id.* However, declaratory judgments should be issued where they will clarify legal relations and serve a useful purpose. *See Los Angeles County Bar Ass'n v. March Fong Eu*, 979 F.2d 697, 703 (9th Cir. 1992) (holding that before exercising jurisdiction over requests for declaratory judgment, courts should consider whether that relief would serve a useful purpose, clarify legal relations, or end a controversy).

## III. ANALYSIS

### A. Standing[2]

VIARA seeks relief as an association on behalf of its members.

A plaintiff has standing under Article III of the Constitution when the plaintiff has suffered an actual or imminent injury that is fairly traceable to the defendant's actions. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). To have standing as an association or representative trade organization, VIARA must demonstrate that: (1) the members of the organization have an individual right to sue; (2) the interests asserted are germane to the organization's purposes; and (3) the rights asserted and remedies sought do not require the presence of the individual members. *Hunt v. Wash. Apple Adver. Comm'n*, 432 U.S. 333, 342, 97 S. Ct. 2434, 53 L. Ed. 2d 383 (1977).

VIPA has threatened VIARA's individual members with fines and other punitive action if they do not refrain from using courtesy cars to transport their customers from the airport to their places of business. Thus, each of VIARA's individual members faces an actual or imminent injury and could individually bring this action. *See Defenders of Wildlife,*

---

[2] At the motion hearing, VIARA voluntarily raised the question of its own standing to contest Act 5231. VIPA did not contest standing at oral argument, but requested time to research the matter further and, if necessary, submit an opposition brief. VIARA subsequently submitted a brief in support of standing. VIPA did not submit a brief.

504 U.S. at 560 (holding that standing requires that an injury be actual or imminent). Additionally, VIARA seeks to further the economic interests of its members by protecting their ability to offer complimentary shuttle service from the airport to their places of business. Finally, VIARA's request for declaratory and injunctive relief does not require individual members to participate in the suit. *See Warth v. Seldin*, 422 U.S. 490, 515, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) (noting that where an association seeks a "declaration, injunction or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured"). VIARA's claim is "thus properly resolved in a group context." *Hunt*, 432 U.S. at 344; *see also Pa. Psychiatric Soc'y v. Green Spring Health Servs.*, 280 F.3d 278, 293 (3d Cir. 2002) ("So long as the association's members have or will suffer sufficient injury to merit standing and their members possess standing to represent the interests of third-parties, then associations can advance the third-party claims of their members without suffering injuries themselves.").

## B. The Scope of VIPA's Authority under Act 5231

VIARA seeks a declaration from this Court that VIPA lacks the authority under Act 5231 to limit VIARA's members' access to King or Rohlsen airports. To determine the scope of VIPA's authority under Act 5231, this Court must examine and interpret the language of the Act.

The "starting point in every case involving construction of a statute is the language itself." *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 685, 105 S. Ct. 2297, 85 L. Ed. 2d 692 (1985) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S. Ct. 1917, 44 L. Ed. 2d 539 (1975) (Powell, J., concurring)). "[I]n the absence of a patent absurdity, we must interpret a statute according to its plain meaning." *Coraggioso v. Ashcroft*, 355 F.3d 730, 732 (3d Cir. 2004); *see also Caminetti v. United States*, 242 U.S. 470, 485, 37 S. Ct. 192, 61 L. Ed. 442 (1917) ("It is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms.").

Even a cursory review of the Act reveals that the purpose of the Act is to grant, and to regulate the operation of, an exclusive taxicab franchise

at the airports on St. Thomas and on St. Croix. Indeed, the Act is replete with references addressing the regulation of taxicabs.

To begin, the preamble states that the purpose of the Act is to provide an "exclusive franchise for the operation of all public taxicab service." Section 1(d) of the Act restates that purpose: "The franchisee shall have the exclusive right to provide public taxicab service from the [] terminal facility." The Act also requires franchisees to "provide a variety of licensed taxicabs at the terminal [facilities]." Act 5231 § 1(q). Further, the Act requires the franchisees to "employ and assign a uniformed and trained taxicab dispatcher during all operating hours." *Id.* The franchisees also must post "a large and conspicuous sign detailing the taxicab tariffs." *Id.* at § 1(s). The Act also mandates that the franchisees "shall provide a taxicab to any passenger requesting service regardless of the number of passengers or the destination of the passengers." *Id.* at § 1(u). Indeed, the term "taxicab" appears on every page of the Act. However, notably missing from the Act is a definition of the term at the center of the Act's focus, "taxicab."

Where, as here, there is an undefined term in a statute, that term is construed "in accordance with its ordinary and natural meaning." *United States v. E.I. Dupont De Nemours & Co.*, 432 F.3d 161, 171 (3d Cir. 2005) (citing *United States v. Alvarez-Sanchez*, 511 U.S. 350, 357, 114 S. Ct. 1599, 128 L. Ed. 2d 319 (1994)). To that end, courts may refer to dictionaries for guidance regarding the ordinary meaning of a statutory term. *See, e.g., MCI Telecomm. Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 225-29, 114 S. Ct. 2223, 129 L. Ed. 2d 182 (1994) (using dictionary definitions to interpret the undefined statutory term "modify").

Webster's Dictionary defines the term "taxicab" as "an *automobile that carries passengers for a fare,* usually determined by the distance traveled." WEBSTER'S COLLEGIATE DICTIONARY 1280 (11th ed. 2004) (emphasis added). Accordingly, the standard definition of taxicab does not contemplate the use of a vehicle to provide transportation free of charge as VIARA's members provide their customers. There is nothing in the Act to suggest that the Virgin Islands Legislature intended anything other than the standard definition of "taxicab" when it used the term in the Act.

VIPA nonetheless contends that the vehicles used by VIARA's members fall into the class of vehicles defined in the Virgin Islands Code as "automobiles for hire" that carry "passengers for hire," which is also

defined in Virgin Islands law. Because taxicabs are included in the definition of "automobiles for hire," VIPA asserts that VIARA's members should be treated like taxicabs subject to the Act.[3]

VIPA's syllogism fails and must be rejected, however, as it defies logic. While vehicles that carry "passengers for hire" may be taxicabs, not all vehicles that carry "passengers for hire," as that term is defined by the Virgin Islands Code, are taxicabs. Thus, while VIARA's members may carry "passengers for hire," VIARA's courtesy cars are not taxicabs.[4]

Additionally, statutes granting one party the exclusive authority to act in one capacity do not necessarily prohibit other parties from undertaking related action not specifically covered by the statute. *See, e.g., Hi Tech Trans, LLC v. New Jersey*, 382 F.3d 295, 309 (3d Cir. 2004) (noting that New Jersey was not prohibited from regulating a waste disposal company that employed railroad tracks and cars in its operation despite a federal law granting the Surface Transportation Board the authority to regulate railroad operators because the company's use of the railroads was not included in the regulated use contemplated by the federal regulation).

In sum, nothing in the Act proscribes transportation by means other than taxicab. Rather, the Act outlines the parameters under which taxis must operate within the franchise. *See, e.g., Ill. Bell Tel. Co. v. WorldCom Tech., Inc.*, Nos. 98-3150, 98-3322, and 98-4080, 1999 U.S. App. LEXIS 20828 at *20 (7th Cir. June 18, 1999) ("That the [Tele-communications Act of 1996, 47 U.S.C. §§ 251 and 252] does not require reciprocal compensation for calls to ISPs is not to say that it

---

[3]    VIPA's conclusion appears to be driven by title 20, section 101 of the Virgin Islands Code, which defines "automobile for hire" as any "motor vehicle operated for the purpose of transporting passengers for hire." That same section of the Virgin Islands Code defines "Passengers for hire" as:

> occupants of a motor vehicle (1) who pay a fixed rate or fee for transportation in a motor vehicle operated on the highways of the Virgin Islands; or (2) *whose transportation in a motor vehicle operated on the highways of the Virgin Islands is furnished as incidental to the use, or as part of the cost for the use of ... any drive-yourself motor vehicle for lease ... .*

*Id.* (emphasis added).

[4]    VIPA's argument is akin to that which suggests: (1) iguanas lay eggs; (2) snakes lay eggs; (3) therefore, iguanas are snakes. That line of reasoning is an unsound exercise in illogic that this Court cannot accept.

prohibits it. The Act simply sets out the obligations of all local exchange carriers to provide for reciprocal compensation ... .") (unpublished amendment to *Ill. Bell Tel. Co. v. WorldCom Tech., Inc.*, 179 F.3d 566, *reh'g denied*, 2000 U.S. App. LEXIS 19163, and *cert. denied*, 535 U.S. 1107, 122 S. Ct. 2318, 152 L. Ed. 2d 1071 (2002)). Indeed, to read the statute otherwise would lead to absurd results.[5] This Court presumes that the Legislature had no such intention. *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."). To avoid that outcome, "we must take care not to extend the scope of the statute beyond the point where [the Legislature] indicated it would stop." *62 Cases of Jam v. United States*, 340 U.S. 593, 600, 71 S. Ct. 515, 95 L. Ed. 566 (1951).

## C. Previous Caselaw

Finally, while both parties contend that *Southerland v. St. Croix Taxicab Association*, 315 F.2d 364, 4 V.I. 397 (3d Cir. 1963) and *V.I. Port Authority v. Virgin Islands Taxi Association*, 979 F. Supp. 344 (D.V.I. App. Div. 1997) support their respective positions, those cases are inapposite as they address constitutional challenges to taxicab franchise laws in the Virgin Islands. *See Southerland*, 315 F.2d at 368 (holding that a taxicab franchise law that prohibited tour operators and hotels from providing transportation from the airport unconstitutionally restrained interstate commerce); *V.I. Port Auth.*, 979 F. Supp. at 346 (upholding Act 5231 against a challenge under the Commerce Clause of the Constitution by hotel and tour operators that employed non-franchised taxicabs to provide transportation from the airports). Because this matter is decided on the language of the statute, this Court need not address VIARA's constitutional arguments. *See Clark v. Martinez*, 543 U.S. 371, 381-82, 125 S. Ct. 716, 160 L. Ed. 2d 734 (2005) (noting that courts are to avoid addressing unnecessary constitutional questions); *see also Burton v. United States*, 196 U.S. 283, 295, 25 S. Ct. 243, 49 L. Ed. 482 (1905) ("It is not the habit of the Court to decide questions of a

---

[5] Pushed to its logical conclusion, VIPA's reading would require those leaving by bicycle to take a VITA or SCTA taxicab from the terminals.

constitutional nature unless absolutely necessary to a decision of the case.").

## III. CONCLUSION

█ The Court appreciates VIPA's position. However, because the language of the Act is clear, the Court's interpretation must follow basic tenets of statutory construction and interpretation. Those tenets lead the Court to the inevitable conclusion that VIARA's members are not covered by Act 5231, and VIPA has no authority to limit VIARA's members' access to the airports.

Accordingly, because there are no genuine issues of material fact and VIARA is entitled to judgment as a matter of law, the Court will grant VIARA's motion for summary judgment. An appropriate order follows.