# CASES

## ARGUED AND DETERMINED

IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS, THE DISTRICT COURTS, AND THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

### BROLASKI et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1922. Rehearing Denied March 27, 1922.)

#### No. 3757.

1. **Criminal law ⫘1134(4, 10)—Rulings on motion in arrest and for new trial are not reviewable.**

   Rulings on the motion of accused in arrest of judgment and for new trial are not assignable as error in the appellate court.

2. **Criminal law ⫘1134(3)—Courts must always consider sufficiency of indictment and jurisdiction of trial court.**

   The federal appellate court must always consider the questions whether an indictment charges an offense and whether the court below had jurisdiction.

3. **Indictment and information ⫘86(2)—Omission of venue of one overt act does not invalidate indictment for conspiracy.**

   Since the overt act in furtherance of a conspiracy need not have been committed within the jurisdiction in which the conspiracy was formed, an indictment alleging the venue of the conspiracy and of all the overt acts but one was not insufficient because of its failure to allege the venue as to that act.

4. **Conspiracy ⫘43(10)—Indictment charging intent to violate statute and prohibition regulation states an offense.**

   An indictment under Cr. Code, § 37 (Comp. St. § 10201), charging conspiracy to violate the National Prohibition Act and a regulation of the Commissioner of Internal Revenue, charges an offense, since it charges a conspiracy to commit a crime and the violation of the regulation would defraud the United States.

5. **Criminal law ⫘419, 420(1)—Evidence as to power of attorney filed in prohibition office is not hearsay.**

   Where a witness for the prosecution had testified he procured a permit to engage in the wholesale liquor business at the solicitation of defendant and gave a power of attorney with reference thereto, testimony that the power of attorney was found in the local prohibition office was admissible to corroborate the witness, and was not objectionable as hearsay.

6. **Criminal law ⫘1159(2)—Appellate court cannot weigh the evidence.**

   The appellate court cannot be called upon to weigh the evidence on review of a conviction for crime.

---

⫘For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

279 F.—1

**7. Criminal law ⟷865(1)—Remarks of judge held not erroneous coercion of jury.**

Where, after the jury had been out over night and had reported it was impossible to agree, the court stated he had read wagers were offered on the result of the trial at odds which he did not think were justified and did not desire to be a party to easy winning of the money, and that he would send the jury back for further deliberation, to which exception was taken, and, after another night, during which they received further instruction to which no exception was taken, the jury returned a verdict of guilty, the remarks of the court did not amount to coercion of the jury sufficient to invalidate it.

Ross, Circuit Judge, dissenting.

In Error to the District Court of the United States for the First Division of the Northern District of California; Maurice T. Dooling, Judge.

Harry Brolaski and another were convicted of conspiracy to violate the National Prohibition Act, and they bring error. Affirmed.

Certiorari denied 257 U. S. ——, 42 Sup. Ct. 381, 66 L. Ed. ——; Newton v. United States, 257 U. S. ——, 42 Sup. Ct. 589, 66 L. Ed. ——.

Hugo K. Asher, Philip S. Ehrlich, William F. Herron, O. N. Hilton, Soren X. Christensen, Cæsar A. Roberts, and Maxwell McNutt, all of San Francisco, Cal., for plaintiffs in error.

John T. Williams, U. S. Atty., and Frank M. Silva, Sp. Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. Under an indictment which charged them with conspiracy to violate title II of the National Prohibition Act (41 Stat. 305) and Regulation 60, promulgated by the Commissioner of Internal Revenue, the plaintiffs in error were convicted. The indictment set forth the means whereby the object of the conspiracy was to be effected, and certain overt acts were alleged to have been committed in pursuance thereof.

[1-4] Error is assigned to the denial of the motion of plaintiffs in error in arrest of judgment, and their motion for a new trial. While rulings on neither of these motions is assignable as error in a federal appellate court, such courts must always entertain the question whether an indictment charges an offense, and the question of the jurisdiction of the court below. It is contended that the indictment is insufficient to charge an offense, and that the jurisdiction of the court below is not shown in that no venue is alleged as to the offense as charged. But it is distinctly alleged that at the city and county of San Francisco, Northern district of California, the defendants willfully, etc., conspired, combined, and agreed together, etc. It is only in the allegations as to one of the numerous overt acts that there is failure to allege venue, and that failure cannot affect the validity of the indictment. The overt act need not in itself state a criminal offense, and it is not necessary that it shall have been committed within the jurisdiction in which the conspiracy was entered into. Aside from that one overt act, the venue is distinctly alleged in all the other overt acts which are pleaded. Unquestionably the indictment charges a violation of section 37 of the Criminal Code (Comp. St. § 10201). It is urged that it is no crime to

violate Regulations 60. But the indictment charges also a conspiracy to violate certain provisions of the National Prohibition Law. And a conspiracy to violate Regulations 60 would in any view be a conspiracy to "defraud the United States."

[5] It is contended that the court below erroneously admitted certain testimony which is said to have been hearsay. One Anderson, a witness for the prosecution, had testified that Brolaski persuaded him to go into the wholesale liquor business, and to get a permit; that Anderson got the permit, had it in his possession but a short time when Brolaski took it from him and retained it; that Anderson desired to cancel the permit and return to his home in Nevada, but Brolaski and Gamage, one of his codefendants, induced him to execute a power of attorney to Gamage, promising Anderson to protect him and pay him 25 per cent. of the proceeds of their sales. To corroborate Anderson's testimony the government was permitted to introduce testimony to the effect that in the files of the local prohibition office at a certain specified time there was no power of attorney to anybody, and that a few days later Anderson's power of attorney to Gamage was found in the files. This evidence was clearly admissible in corroboration of Anderson's testimony, and none of it was subject to objection on the ground that it was hearsay.

[6] It is contended that the evidence was insufficient to justify the verdict. There was no motion for an instructed verdict on behalf of the plaintiffs in error, and no ruling of the court below on the sufficiency of the evidence is found in the record. This court cannot be called upon to weigh the testimony, and it is not contended that there was no evidence which if credited would sustain the verdict.

[7] The principal contention is that the court below coerced the jury. Six and one-half hours after the jury retired to deliberate upon their verdict, they returned into court and asked to have portions of certain testimony repeated to them. Shortly thereafter the jury retired to a hotel for the night, and in the morning they resumed their deliberations, and at 11:40 a. m. returned into court and reported that it would be impossible to reach an agreement. The court then said:

"I do not desire to impose any hardship on you, gentlemen, but I was very much surprised to read in the papers yesterday morning that some sporting gentlemen with an apparent foreknowledge of the result were betting two to one on the result of the trial. There did not seem to me to be anything in the case warranting any such long odds. I do not desire to be a party to the easy winning or losing of bets of that kind. I think that the others who had confidence in the twelve men, if I may borrow a betting phrase, should at least have a run for their money. So I shall ask you to retire again."

These remarks were excepted to, and they are the basis of the assignment of error on which the plaintiffs in error rely. The jury again retired to deliberate, and nine hours and ten minutes thereafter they came into court, asking for further instructions. Having received such further instructions, they again retired, and at 10 o'clock on the following morning, 12 hours and 55 minutes after so receiving instructions, the jury returned with their verdict. No exceptions were saved as to any of the proceedings, subsequent to the time when the court made the remarks which are here presented as grounds for reversal. We

have given careful consideration to the remarks.' We are unable to see in them anything of duress or coercion. It is not improper to send a jury back for further deliberation after they have announced in positive terms that they cannot agree. It is not improper to impress upon them their duty to reach an agreement. It is not improper to direct their attention to the serious nature of the crime charged. There was nothing in the remarks of the court that tended to urge or induce the jury to find a verdict against the defendants. The court at all times gave the jury to understand that the facts in the case were matters for them to determine; that it was their duty to determine them in accordance with the evidence as it honestly appealed to them. At the time when the jury came back for instructions, the court said:

· "It is no pleasure to me to keep you gentlemen together for what might seem to you to be an unreasonable time, and yet, under all the surrounding circumstances of this case, I feel it my duty not to discharge this jury until they have exhausted every honest effort to reach a verdict."

The case lacks the features which in Peterson v. United States, 213 Fed. 920, 130 C. C. A. 398, rendered the instructions erroneous.

The judgment is affirmed.

HUNT, Circuit Judge. I concur in the affirmance of the judgment. The question whether there was error in the remarks of the court to the jury should be determined solely by the record as it was before the court and jury at the time when the judge made the remarks objected to. It does not appear from the record of proceedings on the trial that the judge had in his mind any particular newspaper article when he made the remarks objected to, or that any particular article had been read by the jurors.

ROSS, Circuit Judge (dissenting). While agreeing to all that is said · in the opinion of the court down to the last point therein considered, I feel obliged to dissent from the conclusion of the court as to that, and consequently obliged to dissent from the judgment here given.

It appears from the record that after a lengthy trial the case was submitted to the jury at 5:35 p. m. of December 16, 1920, and that several hours thereafter the jury returned into court with the request for a statement as to what the testimony was relative to certain alleged transactions between the defendants and a witness named Anderson, which request. was complied with by the court, and the jury again retired. At 11:40 a. m. the next day, the jury having returned into court without a verdict, these proceedings occurred:

"The Foreman: Your honor, the jury has worked continuously and carefully on this case, weighing every bit of evidence that we could remember. I think every individual juror has given very careful attention to all of the details. We have not agreed, and it is impossible that an agreement can be reached.

"The Court: That applies to all of the defendants, does it?

"The Foreman: Yes.

"The Court: I don't know whether I made it clear to you but the law is that at least two of the defendants must have conspired, and it is not necessary that the jury should find that all three of them did.

"The Foreman· That is clear to us, your honor.

"The Court: I do not desire to impose any hardship on you gentlemen, but I was very much surprised to read in the papers yesterday morning that some sporting gentlemen with an apparent foreknowledge of the result were betting 2 to 1 on the result of the trial. There don't seem to me to be anything in the case warranting any such long odds. I do not desire to be a party to the easy winning or losing of bets of that kind. I think that the others who had confidence in the 12 men, if I may borrow a betting phrase, should at least have a run for their money, so I shall ask you to retire again."

To those remarks counsel for the defendants excepted.

The jury, being then sent back for further deliberation, again returned into court at 8:55 the evening of the same day, whereupon the court made to it this statement:

"Gentlemen, I have come here at the suggestion of some of the jurors that they would like to have the court go over instructions again bearing upon the question of reasonable doubt, and the testimony of so-called accomplices. I want you to understand that it is not any more pleasant for me than it is for you to be in court at this hour of the night, but what I believe a decent regard for the proprieties compels me to keep you gentlemen together until I am fully satisfied that a result cannot be reached properly. Bearing upon the suggestion that has brought me here at this hour, I will read to you the instructions that have been called for."

Whereupon the court read to the jury certain portions of its charge concerning the testimony of accomplices, and defining the term "reasonable doubt," and then made to the jury this statement:

"It has been suggested to me that while you have not been able to reach any verdict in this case as to all the defendants, yet there is some prospect of agreeing as to some. Now, we have a long calendar here; this court has enough work before it to keep it busy, even if nothing else comes to it, for practically a year, working every day. We have spent two weeks on the trial of this case, and we should not be put to the expense and trouble and time of trying it again if 12 reasonable men can, after due deliberation, reach a verdict. The facts, of course, are matters for the jury to determine, but they have not the arbitrary power of determining them. They should determine them in accordance with the evidence as it honestly appeals to them. As I have suggested, it is no pleasure to me to keep you gentlemen together for what might seem to you to be an unreasonable time, and yet under all the surrounding circumstances of this case I feel it my duty not to discharge this jury until they have exhausted every honest effort to reach a verdict. I must therefore ask you to retire and deliberate further."

The jury thereupon resumed their deliberations, and at 10 a. m. the following day returned into court with a verdict finding the defendant Gamage not guilty, and the defendants Brolaski and Newton guilty.

As said by this court in the case of Peterson v. United States, 213 Fed. 920, 924, 130 C. C. A. 398, 402:

"Considerable latitude is to be allowed the trial judge in impressing upon the jurors their duty at all times earnestly to endeavor, by a candid comparison of views and fair argument, to reach an agreement, and we are not disposed narrowly to limit this discretion."

Yet we held erroneous this instruction given in that case upon the report of the jury to the court that they had agreed as to one of the defendants but were unable to agree as to the other two:

"The court at this time declines to receive a verdict as to one defendant. The case should be finally disposed of as to all. This is, as you know, the second trial. To try it again means to try it before a jury drawn from the

same community that you have been, and with no reason to believe that they would be any more intelligent or honest than you are or any more likely to arrive at a verdict. Justice to both parties demands that the case be brought to an end. The expense of these trials is very great; possibly the expense of the parties so far incurred is from $7,000 to $10,000. The government has a right to a verdict without further expenditure of time and money. The defendants, if guilty, have a right to have that fact determined by a verdict before they are bankrupt in pocket, and likewise if they are innocent they have the right to be acquitted before their means are exhausted. You state, in answer to the court's question, that you stand seven to five. If seven are for acquittal, the five should seriously inquire whether there is not a reasonable doubt of the guilt of the defendants when seven of their fellows of equal intelligence and honesty have found that there is; if seven are for conviction, the five should equally seriously inquire whether there is a reasonable doubt of the guilt of the defendants when seven of their fellows of equal intelligence and honesty find there is no doubt. After three days spent in the trial of this case, with no reason to believe that it can be any better tried before another jury, the court is disposed to direct you to further consider the case, believing that you can honestly come to an agreement."

In holding the instruction so given erroneous, we said, among other things:

"Without cautioning the jurors against yielding their honest, conscientious convictions, whatever they may have been, to mere numbers or to considerations of economy, the presiding judge unqualifiedly told them that 'the case should be finally disposed of as to all' defendants. 'The government has a right,' it was said, 'to a verdict without further expenditure of time and money.' And the instruction was closed by the expression of a 'belief' that the jurors could 'honestly come to an agreement.' The court might very well have expressed the hope for such an agreement, but it is difficult to conceive what basis there was at that juncture for believing that the jury could honestly agree. It is to be borne in mind that nowhere did the court make it clear that, however desirable it might be to avoid another mistrial and finally to terminate the prosecution, an agreement should not be reached in violation of the honest conviction of any one of the jurors. It was not correct to say that the government had a right to a verdict without further expenditure of time and money; it had only a right to a fair consideration of the case. No obligation rested upon it to make any further expenditure, for, in case of a mistrial, it would have been the right, if not the duty, of the prosecuting officers to dismiss the prosecution. In any event, it was not its right to demand an agreement; nor did the defendant have such right. But one impression could have been left upon the minds of the jurors, and that such impression was made is borne out by the event. They retired, and in less than an hour returned with a verdict acquitting the one defendant and convicting the other, and this without any new light upon the law, or any further suggestion from the court as to the significance or character of any of the evidence in the case, and after the jury had deliberated the larger part of a day, with the resultant conviction upon their part that they could not get together. Can there be any question that, retiring with the impression that the all-important thing was a final disposition of the case, the jurors consciously or unconsciously bartered the acquittal of one defendant for the conviction of the other?"

In the instant case, after the jury had considered the case from 5:35 p. m. of December 16th to 11:40 a. m. of the next day, and had then reported to the court that it had "worked continuously and carefully" on the case and were unable to reach an agreement, the court said to them:

"I do not desire to impose any hardship on you gentlemen, but I was very much surprised to read in the papers yesterday morning that some sporting

gentlemen with an apparent foreknowledge of the result were betting two to one on the result of the trial. There don't seem to me to be anything in the case warranting any such long odds. I do not desire to be a party to the easy winning or losing of bets of that kind. I think that the others who had confidence in the twelve men, if I may borrow a betting phrase, should at least have a run for their money, so I shall ask you to retire again."

From the expression, "There don't seem to me to be anything in the case warranting any such long odds," I think one or more of the jurors might well have drawn the inference that the court was of the opinion that the defendants were guilty; particularly, as the jury had then been out one night and a part of a day without being able to agree.

Being sent back for further deliberation, the jury again came into court at 8:55 in the evening of the same day, for the purpose of having the court again state its instructions "bearing upon the question of reasonable doubt, and the testimony of accomplices," whereupon the court said:

"I want you to understand that it is not any more pleasant for me than it is for you to be in court at this hour of the night, but *what I believe to be a decent regard for the proprieties* (italics mine) compels me to keep you gentlemen together until I am fully satisfied that a result cannot be reached *properly*" (italics mine).

The court then proceeded to re-read the instructions regarding the question of reasonable doubt and the testimony of accomplices, and added:

"It has been suggested to me that while you have not been able to reach any verdict in this case as to all the defendants, yet there is some prospect of agreeing as to some. Now, we have a long calendar here; this court has enough work before it to keep it busy, even if nothing else comes to it, for practically a year, working every day. We have spent two weeks on the trial of this case, and we should not be put to the expense and trouble and time of trying it again if twelve reasonable men can, after due deliberation, reach a verdict. The facts, of course, are matters for the jury to determine, but they have not the arbitrary power of determining them. They should determine them in accordance with the evidence as it honestly appeals to them. As I have suggested, it is no pleasure to me to keep you gentlemen together for what might seem to you to be an unreasonable time, and yet *under all the surrounding circumstances of this case* (italics mine) I feel it is my duty not to discharge this jury until they have exhausted every honest effort to reach a verdict. I must therefore ask you to retire and deliberate further."

It seems to me that there can be no doubt that the jurors must have understood that the above portions of the statements of the court to them that I have italicized referred to the newspaper statement regarding the two to one wagers brought to the attention of the jury by the court in its instruction. I regard it as very clear that the bringing of that matter to the attention of the jury at all was error on the part of the learned judge of the court below, who was no doubt exasperated by the publication, thus for the time being losing the poise and wisdom which usually characterize his administration of justice; which error was emphasized by the two subsequent references to the same matter that have been alluded to.

It is well, I think, to recall what the Supreme Court of the United States held in the case of Burton v. United States, 196 U. S. 283, 307, 25 Sup. Ct. 243, 250, 49 L. Ed. 482, where that tribunal declared:

"Balanced as the case was in the minds of some of the jurors, doubts existing as to the defendant's guilt in the mind of at least one, it was a case where the most extreme care and caution were necessary in order that the legal rights of the defendant should be preserved. Considering the attitude of the case as it existed when the jury returned into court for further instructions, we think the defendant was entitled, as matter of legal right, to the charge asked for in regard to the previous requests to charge, which had been granted by the court under the circumstances stated, and it was not a matter of discretion whether the jury should, or should not, be charged as to the character of those requests. A slight thing may have turned the balance against the accused under the circumstances shown by the record, and he ought not to have longer remained burdened with the characterization of his requests to charge, made by the court, and when he asked for the assertion by the court of the materiality and validity of those requests which had already been made, the court ought to have granted the request.

"We must say in addition, that a practice ought not to grow up of inquiring of a jury, when brought into court because unable to agree, how the jury is divided; not meaning by such question, how many stand for conviction or how many stand for acquittal, but meaning the proportion of the division, not which way the division may be. Such a practice is not to be commended, because we cannot see how it may be material for the court to understand the proportion of division of opinion among the jury. All that the judge said in regard to the propriety and duty of the jury to fairly and honestly endeavor to agree could have been said without asking for the fact as to the proportion of their division; and we do not think that the proper administration of the law requires such knowledge or permits such a question on the part of the presiding judge. Cases may easily be imagined where a practice of this kind might lead to improper influences, and for this reason it ought not to obtain."