LON SOUTHERLAND, Doing Business as
SOUTHERLAND TOURS, Appellant
v.
ST. CROIX TAXICAB ASSOCIATION
and
THE GOVERNMENT OF THE VIRGIN ISLANDS
No. 14,162
United States Court of Appeals
Third Circuit

Argued at Christiansted January 30, 1963
Decided March 20, 1963

*See, also, 315 F.2d 364*

399

A. CUYLER TEN EYCK, JR., ESQ. (JOHNSON & TEN EYCK), Christiansted, St. Croix, Virgin Islands, *for appellant*

PETER J. O'DEA, ESQ., Assistant Attorney General, Charlotte Amalie, St. Thomas, Virgin Islands, *for appellee*

Before MARIS, WOODBURY and HASTIE, *Circuit Judges*

MARIS, *Circuit Judge*

The plaintiff, Lon Southerland, has appealed to this court from a final judgment of the District Court of the Virgin Islands dismissing, on appeal from the Municipal Court of St. Croix, his complaint which sought an injunction against the defendants, the St. Croix Taxicab Association and the Government of the Virgin Islands. The plaintiff conducts sightseeing tours and other tourist business in the island of St. Croix under the name of "Southerland Tours". He also has offices and conducts similar business in St. Thomas and Puerto Rico. The facts out of which the controversy arose are these:

In the course of his business the plaintiff entered into a contract with the Fedders Corporation on March 6, 1961. That corporation had granted a bonus vacation of one week in St. Croix, all expenses paid, to a large number of its sales representatives. The Fedders guests were to travel to St. Croix in groups each week. Under the contract plaintiff was to meet them at the Alexander Hamilton Airport in St. Croix and transport them to the various hotels to which they were assigned. The guests as part of their paid vacation were entitled, if they so desired, to take a one day side trip by air to St. Thomas. It was part of the plaintiff's contract with the Fedders Corporation to pick up at their hotels the Fedders guests desiring to make the trip to St. Thomas, transport them to the Alexander Hamilton Airport, meet them upon arrival in St. Thomas and give them a tour of that island and a lunch, return them to the airport at St. Thomas and upon their arrival

at the airport in St. Croix to pick them up and transport them back to their hotels. The Fedders guests made no payment for any of these services to plaintiff who received his entire compensation directly from the Fedders Corporation. To meet the terms of the contract he had to furnish new equipment to transport the guests and to furnish passenger liability insurance. The plaintiff purchased four new Volkswagen buses, each seating eight persons, to carry out the contract.

Plaintiff also represents travel agencies such as American Express Company and Thos. Cook and Son which provide a client with what is known as a "package tour", the original purchase price of which includes air transportation to the point of destination, the services of a representative to meet him upon arrival, transportation from the airport to the hotel which the tourist agency has arranged for him, in most cases at least two meals per day, and transportation back to the airport when he returns home. On such package tours the plaintiff receives no payment from the traveller, his compensation being paid to him by the travel agency directly. In most instances the traveller receives from the travel agency coupons evidencing his prepaid right to transportation to and from the hotel which he surrenders to the driver.

On September 6, 1961 the Government of the Virgin Islands entered into a contract with the defendant Taxicab Association granting to them an exclusive franchise

"to remove all persons from the aforesaid [Alexander Hamilton] airport except those departing by foot, by rental vehicles furnished by holder of a car rental franchise, or by privately owned vehicles which are not vehicles for hire. For purposes of this agreement a vehicle owned or operated by a tour or travel agency or service, whether or not engaged in transporting clients for fares, shall be deemed a 'vehicle for hire'."

The Fedders guests began arriving in St. Croix in early September, 1961, and the plaintiff transported them from

the airport to their hotels in his Volkswagen buses and also transported them to and from the airport on their side trips to St. Thomas. On October 3, 1961 the plaintiff and his drivers had been waiting at the Alexander Hamilton Airport to meet and transport to their hotels a group of Fedders guests who had made the side trip to St. Thomas. Upon the arrival of these persons many of them went into the plaintiff's buses in which they had come to the airport that morning. Thereupon a police sergeant informed the plaintiff that he "could not remove these people from the airport", that he, the police sergeant, had "been instructed by the authorities to prevent you from doing so". The Fedders guests were required by police officers to leave the plaintiff's buses and get in taxicabs operated by the defendant Taxicab Association. The plaintiff was arrested by the police sergeant at the instance of the dispatcher of the defendant Taxicab Association and charged with disobeying the orders of a police officer. He was subsequently discharged from custody on a writ of habeas corpus issued by the district court.

During the remaining period of plaintiff's contract with the Fedders Corporation he had his buses on the public highway near the terminal building at the airport ready to perform his contractual obligation to transport the Fedders guests but police officers prevented him from doing so and directed the Fedders guests into taxicabs operated by the defendant Taxicab Association. All Fedders guests were thus transported from the airport to their hotels in taxicabs on and after October 6, 1961. The Fedders guests were not required to pay any fare to the taxicab drivers for that service, however, but the defendant Taxicab Association has made claim against plaintiff for the amount of those fares.

The plaintiff thereupon filed in the Municipal Court of St. Croix, a court of inferior jurisdiction created

by local law[1] pursuant to section 21 of the Revised Organic Act of the Virgin Islands,[2] a complaint seeking an injunction[3] restraining the defendants from interfering with plaintiff's right to meet and transport persons from the Alexander Hamilton Airport who have purchased a package tour under which plaintiff is a party in interest. The Municipal Court dismissed the complaint and the plaintiff appealed to the District Court of the Virgin Islands as authorized by section 22 of the Revised Organic Act of the Virgin Islands[4] and section 33 of title 4 of the Virgin Islands Code.[5] On appeal the District Court, after a hearing de novo as required by the local law,[6] also dismissed the complaint. From its final judgment of dismissal the present appeal was taken by the plaintiff to this court.

■ At the outset we must consider whether we have jurisdiction to entertain the appeal. Section 1291 of title 28, U.S.C., expressly provides that the "courts of appeals shall have jurisdiction of appeals from all final decisions of . . . the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court" and section 1294 provides that appeals from reviewable decisions of the District Court of the Virgin Islands shall be taken to this court. The judgment here appealed from was a final decision of the District Court of the Virgin Islands. It was, however, a decision rendered on an appeal from a court of inferior jurisdiction in the Virgin Islands and the question is whether such a decision on appeal is a "final decision" within the meaning of section 1291 which

[1] 4 V.I.C. § 2.

[2] 48 U.S.C.A. § 1611.

[3] The municipal courts have jurisdiction, concurrently with the District Court, in injunction cases. 4 V.I.C. § 74.

[4] 48 U.S.C.A. § 1612.

[5] "The district court has appellate jurisdiction to review the judgments and orders of the municipal courts in all civil cases in which the matter in controversy exceeds the sum or value of $10, exclusive of interest and costs . . . ." 4 V.I.C. § 33.

[6] 4 V.I.C. § 33.

is further appealable to this court or whether that phrase is to be limited to decisions in cases in which the District Court is exercising its original jurisdiction.

We see no possible basis for thus limiting the scope of section 1291. When that section was enacted in 1948, the then Organic Act of the Virgin Islands expressly conferred upon the District Court of the Virgin Islands jurisdiction, inter alia, of "All appeals from judgments rendered in the inferior courts."[7] Therefore, in 1948 when the Congress enacted section 1291 it knew that among the final decisions which the District Court was then empowered to render were decisions in appeals from the inferior courts of the Virgin Islands. If, because such cases had already been subject to one appeal or for any other reason, the Congress did not wish them to be further appealable to this court it could, and we think would, have said so expressly by inserting qualifying language in section 1291. Not having done so we must take the phrase "all final decisions of . . . the District Court of the Virgin Islands" to mean what it plainly says, that all final decisions of the court in every type of case are within our appellate jurisdiction and not merely those entered by the District Court in the exercise of its original jurisdiction. In Government of the Virgin Islands v. Ferrer, 1960, 4 V.I. 163, 275 F.2d 497, we exercised such jurisdiction without question and, having now considered the question, we uphold the jurisdiction then and now being exercised by us.

██ ██ We turn then to consider the issues which the appeal raises. The appellant does not deny that it is within the power of the Territory of the Virgin Islands to grant an exclusive franchise to a taxicab association to operate taxicabs to remove passengers from an airport upon condition that it provide taxicabs in such numbers and at such hours as will meet the needs of incoming passengers.

[7] Organic Act of the Virgin Islands, section 28, 48 U.S.C.A. § 1406.

Under the agreement here involved the defendant Taxicab Association agreed to have at least 15 operating taxicabs available at the Alexander Hamilton Airport prior to the arrival of all scheduled flights and upon reasonable notice during such irregular flight arrivals as the public convenience might require, and to increase the number of taxicabs upon request of the Government as the convenience of the airport might require. The district court was entitled to take judicial notice of the fact, as do we, that the Alexander Hamilton Airport is located in a rural part of St. Croix, some miles from the hotels and towns of the island and that it is served by no regular public transportation facilities. It seems clear, therefore, that public convenience and necessity require that regularly available transportation service be provided for incoming passengers. Moreover, it may very well be that the exclusion of other taxicab operators from entering the airport to pick up passengers at the terminal building was a reasonable condition by way of quid pro quo for the regular continuously available service which the defendant Taxicab Association undertook to furnish.[8]

The plaintiff argues that the franchise agreement is nonetheless invalid because the Legislature had not authorized it and because it was not signed by the proper governmental officer. In the view which we take of the case, however, we find it unnecessary to consider these contentions. We are satisfied, for the reasons which will be stated, that the particular clause of the franchise agreement is invalid which purports to bring the plaintiff's activities under its ban and under which the Government, through its police officers, prevented the plaintiff from picking up at the Alexander Hamilton Airport the Fedders guests whom he had contracted with the Fedders Cor-

[8] Compare Miami Beach Airline Service v. Crandon, 1947, 159 Fla. 504, 32 So.2d 153, 172 ALR 1425; Ex Parte Houston, 1950, 93 Okla.Cr.App. 26, 224 P.2d 281, 292–294.

poration to transport from the airport to their hotels in St. Croix. This clause is as follows:

"For purposes of this agreement a vehicle owned or operated by a tour or travel agency or service, whether or not engaged in transporting clients for fares, shall be deemed a 'vehicle for hire'."

■■ We think that this clause as applied to the plaintiff's operations in connection with the so-called "package" or "all-expense" tours constitutes an unreasonable burden upon interstate commerce and is invalid for that reason. There is no single concept of interstate commerce which can be applied to every issue. McLeod v. Threlkeld, 1943, 319 U.S. 491, 495, 87 L. Ed. 1538, 1542. Each case must be viewed on its own peculiar facts. The Supreme Court in United States v. Yellow Cab Co., 1947, 332 U.S. 218, 91 L. Ed. 2010, had occasion to make the following observations: [332 U.S. 228–233]

". . . When persons or goods move from a point of origin in one state to a point of destination in another, the fact that a part of that journey consists of transportation by an independent agency solely within the boundaries of one state does not make that portion of the trip any less interstate in character. The *Daniel Ball*, 10 Wall. 557, 565. That portion must be viewed in its relation to the entire journey rather than in isolation. So viewed, it is an integral step in the interstate movement. See Stafford v. Wallace, 258 U.S. 495.

"But interstate commerce is an intensely practical concept drawn from the normal and accepted course of business. Swift & Co. v. United States, 196 U.S. 375, 398; North American Co. v. S.E.C., 327 U.S. 686, 705. And interstate journeys are to be measured by 'the commonly accepted sense of the transportation concept.' United States v. Capital Transit Co., 325 U.S. 357, 363. Moreover, what may fairly be said to be the limits of an interstate shipment of goods and chattels may not necessarily be the commonly accepted limits of an individual's interstate journey. We must accordingly mark the beginning and end of a particular kind of interstate commerce by its own practical considerations.

"Here we believe that the common understanding is that a

406

traveler intending to make an interstate rail journey begins his interstate movement when he boards the train at the station and that his journey ends when he disembarks at the station in the city of destination. What happens prior or subsequent to that rail journey, at least in the absence of some special arrangement, is not a constituent part of the interstate movement. The traveler has complete freedom to arrive at or leave the station by taxicab, trolley, bus, subway, elevated train, private automobile, his own two legs or various other means of conveyance. Taxicab service is thus but one of many that may be used. It is contracted for independently of the railroad journey and may be utilized whenever the traveler so desires. From the standpoints of time and continuity, the taxicab trip may be quite distinct and separate from the interstate journey. To the taxicab driver, it is just another local fare.

\*     \*     \*

"We do not mean to establish any absolute rule that local taxicab service to and from railroad stations is completely beyond the reach of federal power or even beyond the scope of the Sherman Act. . . . Likewise, we are not to be understood in this case as deciding that all conspiracies among local cab drivers are so unrelated to interstate commerce as to fall outside the federal ken. A conspiracy to burden or eliminate transportation of passengers to and from a railroad station where interstate journeys begin and end might have sufficient effect upon interstate commerce to justify the imposition of the Sherman Act or other federal laws resting on the commerce power of Congress."

With these principles in mind, we conclude that under the facts of this case the Fedders guests, whom the defendant prevented the plaintiff from transporting from the airport to their hotels, were in the stream of commerce from the time they left their homes until they returned home again. This is not a situation where the transportation from the airport to the hotel was local haulage in the sense that the traveler's interstate journey had ended at the airport at which point he could independently contract for his transportation service to his hotel by a conveyance of his own choice. On the contrary,

the transportation of these individuals had been arranged for them and paid for in advance as an integral part of their all-expense interstate journey. Hence, it cannot, under these facts, be said that the service rendered by the plaintiff under his contract was distinct and separate from the interstate journey or that it was just another local fare.

■ It is undisputed that the plaintiff's contract for the transportation of the Fedders guests stipulated for the use of Volkswagen buses, which the plaintiff provided, and that this and other similar contracts into which he entered required him to carry passenger liability insurance for the benefit of his clients, neither of which was required by the franchise agreement to be provided by the defendant Taxicab Association. To force an individual engaged in an interstate journey which includes transportation by plaintiff's vehicle to abandon that transportation for which he has paid and which will provide him with the type of vehicle and insurance protection which he desires and employ a local taxicab operator who may well not provide him with either is clearly to impose an unwarranted burden on the interstate commerce involved.

The plaintiff also urges that in classifying the vehicles used in his operations as vehicles for hire the clause in question is so arbitrary and unreasonable as to violate the due process and equal protection clauses of the Revised Organic Act. We need not decide this question, however, in view of our conclusion that the clause, as applied to plaintiff's operations, runs afoul of the commerce clause of the Constitution.

■ We need consider but briefly the Government's contention that the District Court lacked jurisdiction of the subject matter, insofar as it related to the Government, because the action sounds in tort and the Revised Organic Act provides "That no tort action shall be brought against the government of the Virgin Islands or against any officer

or employee thereof in his official capacity without the consent of the legislature constituted by this Act." 48 U.S.C.A. § 1541. The prohibition of the Organic Act is directed to actions to recover damages for torts alleged to have been committed by the Government through its officers or employees.[9] It has no application to an equitable action which does not ask for damages but which merely seeks an injunction restraining future enforcement against the plaintiff of an exclusive franchise granted by the Government.

The judgment of the District Court will be reversed and the cause will be remanded with directions to grant the injunction sought by the complaint.

---

[9] Compare Harris v. Municipality of St. Thomas and St. John, 3 Cir. 1954, 3 V.I. 502, 212 F.2d 323.