678 F.2d 586
 CHARTER LIMOUSINE, INC., a/k/a Carey of Florida, et al.,
Plaintiffs-Appellees,
v.
DADE COUNTY BOARD OF COUNTY COMMISSIONERS, acting as Dade
County Aviation Authority, Defendant-Appellant,
Red Top Sedan Service, Inc., Intervenor-Appellant.
 No. 79-2163.
 United States Court of Appeals,
Fifth Circuit.
 Unit B*
June 17, 1982.
 
 Phillip Schiff, Evan Langbein, Miami, Fla., for Red Top Sedan, etc.
 Stephen P. Lee, County Atty., Miami, Fla., for Dade County.
 Curasi & Davis, Richard M. Davis, Tallahassee, Fla., for plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before JONES, TJOFLAT and ANDERSON, Circuit Judges.
 JONES, Circuit Judge:
 
 
 1
 The Board of County Commissioners of Dade County, Florida, acting as the Dade County Aviation Authority, operates the Miami International Airport. The Authority undertook to grant an exclusive franchise to Red Top Sedan Service, Inc., for ground transportation of passengers from the airport to Dade and Broward counties in Florida. Charter Limousine, Inc., the plaintiff in the district court and the appellee in this Court, brought an action against the county basing jurisdiction upon 28 U.S.C.A. §§ 1331 and 1337, alleging violations of the commerce clause of the United States Constitution. Red Top intervened, and became a party defendant.
 
 
 2
 Charter obtained a decree from the district court enjoining the defendants from interfering with its prearranged ground transportation of air passengers from or into the airport. Charter is a franchisee of the Carey Corporation, a nationwide transportation system which operates franchises in various cities throughout the country to supply limousine services. Carey and its franchisees, through a complex nationwide communications system, schedule pickups of passengers arriving on interstate flights. Charter contended, and the district court held, that it was engaged in interstate commerce as defined in 49 U.S.C.A. 303(b)(7a) and 49 C.F.R. § 1047.45(a) and that the counties' total prohibition of its right of access to the airport constituted an unreasonable burden on interstate commerce. It was the contention of Charter that although the county could grant an exclusive license to Red Top to solicit passengers at the airport, it could not ban Charter completely from engaging in the transportation of passengers with prearranged reservations, who were within the stream of interstate commerce.
 
 
 3
 Dade County and Red Top urge that Charter's prearrangements and tour packages are insufficient to bring Charter's operation within the stream of interstate commerce. They cite various authorities for the proposition that through tickets and common arrangements are necessary to bring Charter's operations, which are solely within the State of Florida, within the purview of interstate commerce.
 
 
 4
 The primary issue on this appeal is how interstate commerce is defined within the context of these prearranged airport pickups. For initial determination is whether we are bound by a series of Interstate Commerce Commission cases which have held that through tickets or common arrangements are required to bring a carrier's operations within the stream of interstate commerce, and that mere prearrangements are insufficient.
 
 
 5
 The district court found that substantially all of Charter's limousine service is prearranged by interstate communication before flight arrival and pickup, and that Charter maintains no on call or at random pickup of passengers at the airport. Sixty to sixty-five percent of Charter's business is derived from reservations provided through the Carey Corporation franchise network. Twenty to twenty-five percent originates through travel agents. The majority of passengers are transported by means of vouchers received by them prior to their interstate flight, and given to the Charter drivers at the time of service. The others pay Charter with a prearranged letter confirming payment by the forwarding agent or tour operator. The district court also found that Charter had complied with Florida statutory requirements.[1] Thus, the Florida Public Service Commission acknowledged that Charter was an exempt interstate motor carrier.
 
 
 6
 Dade County and Red Top urge that the district court applied the wrong standard of interstate commerce to Charter's operations, and failed to apply the I.C.C. rulings and relevant federal court decisions. The primary I.C.C. decision dealing with these questions is Motor Transportation of Passengers Incidental to Transportation by Aircraft, 95 M.C.C. 526 (1964). The Commission held that "... regardless of the intentions of any passengers to continue or complete an interstate journey, a carrier of passengers solely within a state, selling no through tickets, and having no common arrangements with connecting out-of-state carriers, is not engaged in interstate or foreign commerce." This decision has been consistently followed by the Commission. See, Portland Airport-Petition for Declaratory Order, 118 M.C.C. 45 (1973); James T. Kimball, Petition for Declaratory Order, 131 M.C.C. 908 (1980). The Commission relied upon several Supreme Court and other decisions to support its interpretation of interstate commerce, including the case of United States v. Yellow Cab, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947). This was a Sherman Antitrust case. The question was whether the Yellow cabs were within the stream of interstate commerce for purposes of the Sherman Act when they transported passengers after they disembarked from an interstate rail journey. The Supreme Court stated that, "... interstate commerce is an intensely practical concept drawn from the normal and accepted course of business.... What happens prior or subsequent to that (interstate) rail journey, at least in the absence of some special arrangement, is not a constituent part of the interstate movement." ... 332 U.S. at 231-2, 67 S.Ct. at 1567. The Commission also relied upon, inter alia, Mateo v. Auto Rental Company, 240 F.2d 831 (9th Cir. 1957), as precedent for its decision. The issue in Mateo was whether local auto rentals were shown to be part of the stream of interstate commerce for purposes of jurisdiction under the Fair Labor Standards Act. The Ninth Circuit Court of Appeals held that under the facts of that case, and the Fair Labor Standards Act, interstate commerce had not been shown.
 
 
 7
 It is apparent that the Commission in Motor Transportation of Passengers Incidental to Transportation by Aircraft, supra, relied, at least in part, on judicial interpretations of the commerce clause to determine the limitations of its jurisdiction with respect to motor carriers transporting air passengers and operating solely within one state. Usually much deference is given to the decisions of an administrative agency, acting within the scope of its authority. However, when the question is one of law and does not involve the expertise of an agency, we are not bound by that agency's decision. This is particularly true when the decision of the agency is based on an interpretation of a judicial decision that in turn construes the Constitution or a statute. H. W. Wilson Co. v. U. S., 580 F.2d 33 (2 Cir. 1978); see also, Coca-Cola v. Atchison, T. & S. F. Ry. Co., 608 F.2d 213 (5 Cir. 1979).
 
 
 8
 In Motor Transportation of Passengers Incidental to Transportation by Aircraft, supra, the Commission stated that, "We see no reason to depart from the precedents established in prior decisions. Furthermore, we find no overriding necessity, rooted in the public interest, to claim the involved transportation as interstate commerce. We are already heavily burdened enough with regulatory responsibilities without casting about to extend our jurisdiction beyond that specially required by law." 95 M.C.C. at 537. By defining operations such as Charter's as intrastate commerce, the Commission did no more than attempt to narrow its jurisdiction, and avoid this troublesome area. Therefore, the Court is not bound by the decisions of the Commission on the question of law in this case.
 
 
 9
 The Supreme Court in the Yellow Cab, case was not laying down ironclad rules which required common arrangements or through ticketing, as contended by Dade County and Red Top. Charter's use of the interstate Carey Corporation network to accept reservations, and its voucher payment system, satisfies the special arrangement criteria stated by the Supreme Court in Yellow Cab. Other decisions support this view.
 
 
 10
 In Southerland v. St. Croix Taxicab Association, 315 F.2d 364 (3 Cir. 1963), the government of the Virgin Islands had awarded an exclusive taxi franchise to the St. Croix Taxi Association to pickup arriving air passengers and transport them to their hotels. The plaintiff, Southerland, was in the business of organizing package tours. He was told by the Virgin Islands authorities that he could not transport tourists from the airport as a part of his package tours, but must use the St. Croix Taxicab Association. The Third Circuit Court of Appeals held that the exclusive contract constituted an unreasonable restraint on interstate commerce, and stated, ... "we conclude that under the facts of this case the ... guests, whom the defendant prevented the plaintiff from transporting from the airport to their hotels, were in the stream of commerce from the time they left their homes until they returned home again. This is not a situation where the transportation from the airport to the hotel was local haulage in the sense that the travelers' interstate journey had ended at the airport at which point he could independently contract for his transportation service to his hotel by a conveyance of his own choice. On the contrary, the transportation of these individuals had been arranged for them and paid for in advance as an integral part of their all expense interstate journey ...." 315 F.2d at 369.
 
 
 11
 Charter's operations are similar to those set forth in Southerland. See also, Toye Bros., Yellow Cab Company v. Irby, 437 F.2d 806 (5 Cir. 1971). It is the conclusion of this Court that Charter's prearrangements place their operations within the stream of interstate commerce, even though they take place wholly within a single state. The Court concludes, as did the district court, that the restrictions placed upon Charter by the Dade County Commission constitute an unreasonable burden upon interstate commerce.
 
 
 12
 The final question posed by the appellants is whether the district court erred in setting the rates which Charter was required to pay for the use of the airport facilities. The appellants contend that 28 U.S.C.A. § 1342, the Johnson Anti-Injunction Act of 1934, prohibits the district court from enjoining the collection by Dade County of the fees which it had previously received. It appears that the statute is not applicable to this case. First, the statute contains an exception where the order of the state agency interfers with interstate commerce. The foregoing discussion indicates that the appellants have violated the commerce clause. Furthermore, the district court was sitting as an equity court in this case, and we cannot say that it abused its discretion in entering the decree which it did. The district court found that it would be confiscatory to charge Charter the user fees which had been previously set.
 
 The judgment of the district court is
 
 13
 AFFIRMED.
 
 
 
 *
 Former Fifth Circuit case, Section 9(1) of Public Law 96-452-October 14, 1980
 
 
 [1]
 It is unlawful for any motor carrier transporting for compensation in interstate commerce in Florida for which a certificate of public convenience and necessity or a permit is required from the Interstate Commerce Commission to operate over the public highways of this state without having filed a certified copy of such interstate commerce commission authority with the Florida Public Service Commission and having obtained from the Florida Commission a certificate of registration .... F.S.A. § 323.28(2)