**AIRLINE CAR RENTAL, INC.**

v.

**SHREVEPORT AIRPORT AUTHORITY.**

Civ. A. No. 85–1201.

United States District Court,
W.D. Louisiana,
Shreveport Division.

June 2, 1986.

See also D.C., 667 F.Supp. 303.

Charles W. Strickland, Frances Baker Jack, Shreveport, La., for plaintiff.

John M. Madison, Jr., Wiener, Weiss, Madison and Howell, Shreveport, La., for defendant.

VERON, District Judge.

### RULING

On April 1, 1985, the Shreveport Airport Authority passed a resolution entitled "Resolution Establishing Regulations and

Fees for Rental Car Businesses Operating at the Shreveport Regional Airport Without a Lease," whereby it stated that it was necessary to impose charges on entities who did not have contracts with the Authority but who nevertheless used airport facilities in the furtherance of their commercial enterprises. Specifically the Authority intended to levy charges on non-tenant rental car business who pick up and supply services to passengers from the airport, the stated purpose for the revenue so raised to "retire debts incurred for the construction of facilities, pay for Airport equipment and maintenance, protect the public, preserve order, provide for the public health, safety and welfare, enhance the welfare of the Authority, and govern the Airport." The resolution requires non-tenant rental car businesses to obtain from the Authority a Rental Car Non-Tenant Business Permit, which permit would be issued upon compliance with certain requirements, including an agreement "to pay for the duration of the permit to the Authority seven (7%) per cent of all gross business receipts derived from the rental of vehicles to passengers picked up at the Airport...."

Plaintiff, Airline Car Rental, Inc., operated a car rental service located near the Shreveport Regional Airport at the time the resolution was passed and, according to its complaint, it derived the majority of its revenue from customers who travel through the airport and who have already made a reservation for use of an Airline vehicle. In order to transport its customers from the airport to its facility, plaintiff operated a courtesy shuttle service from the designated passenger loading and unloading zones at the airport to its own premises.

Plaintiff has brought the present action seeking declaratory, injunctive, and other relief from the described resolution. Defendant filed a Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, i.e. failure to state a claim upon which relief can be granted. A hearing on the motion was held December 18, 1985 and the matter was taken under advisement.

## DISCUSSION

Before proceeding to the myriad theories of recovery set forth by plaintiff we must consider what is the purpose of the 12(b)(6) motion. Wright & Miller describes it as follows:

> The purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief. Thus, the provision must be read in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim in federal court and calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Only when the pleading fails to meet this liberal standard is it subject to dismissal under Rule 12(b)(6).

Wright & Miller, *Federal Practice and Procedure:* Civil § 1357 at p. 590 (footnotes omitted). It goes on to state:

> The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Rule 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. *The Rule 12(b)(6) motion, as has been mentioned above, only tests whether the claim has been adequately stated in the complaint.* Thus, on a motion under Rule 12(b)(6), the court's inquiry essentially is limited to the content of the complaint; summary judgment, on the other hand, involves the use of pleadings, depositions, answers to interrogatories, and affidavits.

Wright & Miller supra at p. 592 (footnotes omitted) (emphasis added).

■ The 12(b)(6) motion is not favored and should rarely be granted, *Madison v. Purdy,* 410 F.2d 99 (5th Cir.1969), resolution on the merits being preferred to disposition on the technical grounds of failure to state a claim. See, for example, *Blessing v. United States,* 447 F.Supp. 1160 at 1192–93 (E.D.Penn.1978) and cases cited therein. "The question therefore is whether in the light most favorable to plaintiff, and with every doubt resolved in his behalf, the complaint states any valid claim for relief." Wright & Miller, supra at p. 601 (footnotes

omitted). See also *Quinonez v. National Association of Securities Dealers, Inc.*, 540 F.2d 824 (5th Cir.1976) and cases cited therein. Stated another way, "a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Des Isles v. Evans*, 200 F.2d 614 at 615–16 (5th Cir.1952), quoting 2 *Moore's Federal Practice*, 2d Ed., § 8.13, p. 1653.

Having said that, we will now take each theory of recovery alleged by plaintiff, in the order in which defendant argues for dismissal, and view them in light of the purposes and tests outlined above.

### Count I

### Interstate Commerce

A. Airline's Business Does Not Constitute Interstate Commerce.

In support of this ground for dismissal, defendant cites *United States v. Yellow Cab Company*, 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947), as authority for the proposition that "an individual or company can be engaged in a business tangentially related to interstate commerce and still not fall within the ambit of the Commerce Clause." Defendant's Memorandum in Support of Motion to Dismiss (hereafter "Defendant's Memo") at p. 4. Defendant compares the taxi service business scrutinized in *Yellow Cab* to that of plaintiff here in that all traveling here (as it was there) is done intrastate. It concludes that Airline's business, like Yellow Cab's, does not constitute interstate commerce.

In opposition to this contention, plaintiff shows that it alleged in its petition that approximately 80% of its business is derived from prearranged reservations made through a national reservation system.

In *Charter Limousine, Inc. v. Dade County Board of County Commissioners*, 678 F.2d 586 (5th Cir.1982), the court found that plaintiff's operations (ground transportation to and from Miami International Airport) were in the stream of interstate commerce, "even though they take place wholly within a single state," 678 F.2d at 589, since substantially all of Charter's limousine service was prearranged by interstate communications. A review of the record here shows that plaintiff's complaint does in fact allege that a great deal of its operations are prearranged by interstate communications; accordingly, plaintiff has alleged facts which, if proven, would show that it engages in interstate commerce. We cannot dismiss its interstate commerce claim on the ground that plaintiff's business does not constitute interstate commerce.

The Authority further claims that this count should be dismissed because a 10% of gross receipts fee was found to be a "commonly accepted charge throughout the nation for use of Airport facilities" in *Toye Bros., Yellow Cab Company v. Irby*, 437 F.2d 806 (5th Cir.1971). It concludes that "[t]he fact that the 10% fee charged to those who are actually engaged in interstate commerce has been recognized in this Circuit as reasonable and customary, and as not constituting a burden upon interstate commerce, is further reason for Count I of Airline's complaint to be dismissed." Defendant's Memo at p. 8.

This argument ignores the scope and function of a Rule 12(b)(6) motion. Whether or not plaintiff will ultimately prevail on this count is not up for our consideration here. "Whether this is all steam, or whether there is some substance depends on the proof offered either on a trial or on a motion for summary judgment demonstrating that there is no genuine controversy as to this critical, decisive issue under applicable legal principles." *Arthur H. Richland Company v. Harper*, 302 F.2d 324 at 326 (5th Cir.1962) (citations omitted). Plaintiff has alleged that a great deal of its operations are prearranged by interstate commerce, thus it has effectively stated a claim that it engages in interstate commerce. *Charter Limousine*, supra. Additionally, plaintiff has alleged that the resolution has no reasonable relationship to its stated purpose and that the fee imposed is "wholly unrelated to any approximation of the costs to the Airport of Airline's use of the roadway and loading area." See ¶s 28 and 32

respectively of plaintiff's complaint. Accordingly, Airline has alleged that the resolution is an impermissible burden on interstate commerce. See *Park 'N Fly of Texas, Inc. v. City of Houston*, 327 F.Supp. 910 (S.D.Texas 1971) ("If there is (1) a real relation to the protection of the health, welfare, and safety of the people, *and* (2) the regulation is reasonable in its requirements and classifications, the measure imposed by the state or city is a legitimate exercise of its power." 327 F.Supp. at 921 (emphasis provided)). Whether or not plaintiff will ultimately prevail on these allegations is of no concern to this court on this motion, regardless of the fact that jurisprudence has previously held an allegedly similar burden to be reasonable. If the facts of the *Toye* case are so similar to those here that defendant can state that the fee charged is not an unreasonable burden on commerce and that it is entitled to judgment on that issue as a matter of law, then it can raise that point on a motion for summary judgment or at a trial on the merits.

B. The Commerce Clause Does Not Apply to Government Entities as Market Participants.

The Authority also claims that Count I of plaintiff's complaint should be dismissed because defendant is not subject to the restraints of the Commerce Clause as it is acting here as a market participant rather than a market regulator, citing *Transport Limousine of Long Island, Inc. v. Port Authority of New York and New Jersey*, 571 F.Supp. 576 (E.D.N.Y.1983).

■ It is true that when a state or local government enters the market as a participant it is not subject to the restraints of the Commerce Clause. *Reeves, Inc. v. Stake*, 447 U.S. 429, 100 S.Ct. 2271, 65 L.Ed.2d 244 (1980); *Hughes v. Alexandria Scrap Corp.*, 426 U.S. 794, 96 S.Ct. 2488, 49 L.Ed.2d 220 (1976). However, that state or local government's status as a market participant would be an affirmative defense to an otherwise proper claim that the government action in question impermissibly burdens interstate commerce.

■ While a complaint may be dismissed under Rule 12(b)(6) due to the existence of an affirmative defense, "the defense must clearly appear on the face of the pleading." Wright & Miller, § 1357 at pp. 605–66 (footnote omitted). Whether or not a government entity is acting as a market participant involves consideration of various factors. *See generally White v. Massachusetts Council of Construction Employers, Inc.*, 460 U.S. 204, 103 S.Ct. 1042, 75 L.Ed.2d 1 (1983); *Reeves, Inc. v. Stake*, supra; *Hughes v. Alexandria Scrap Corp.*, supra. None of these factors have been alleged by Airport in its complaint, although defendant and plaintiff use them for argument in their respective memorandums. Accordingly, dismissal of Count I because of this affirmative defense would be improper on this 12(b)(6) motion, regardless of the propriety of defendant's entitlement thereto.

### Counts VI and VII

### Sherman Anti-Trust Act

Defendant claims that Counts VI and VII of plaintiff's complaint should be dismissed "because the alleged acts of the Authority, even if they actually occurred, would be exempt from the Sherman Anti-Trust Act." Defendant's Memo at p. 12. It again cites *Transport Limousine* which held that the defendant Port Authority was exempt from anti-trust act liability under the *Parker* doctrine (*Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943)), i.e. because it was "an agent of the state, specifically created by the state and endowed with monopoly power to enforce state policy regarding, *inter alia*, the metropolitan airport." *Transport Limousine*, supra, 571 F.Supp. at 587.

■ This exemption argument would be an affirmative defense to the otherwise well-pleaded Sherman Act claim. As noted earlier, a cause of action cannot be dismissed on a 12(b)(6) motion on the basis of an affirmative defense unless the defense clearly appears on the face of the pleading. Plaintiff here did allege that defendant "is a body politic and corporate organized and existing pursuant to the laws of the State

of Louisiana and ordinances of the City of Shreveport." Plaintiff's Complaint, ¶ 6. However, mere status as a governmental entity is insufficient for exemption from the Sherman Act. *City of Lafayette Louisiana v. Louisiana Power & Light Co.*, 435 U.S. 389, 98 S.Ct. 1123, 55 L.Ed.2d 364 (1978). "[T]he *Parker* doctrine exempts only anti-competitive conduct engaged in as an act of government by the State as sovereign, or, by its subdivisions, pursuant to state policy to displace competition with regulation or monopoly public service." 98 S.Ct. at 1137.

Accordingly, it would be necessary for the plaintiff to have alleged that the Authority was acting as sovereign "pursuant to state policy to displace competition with regulation or monopoly public service" for us to be able to dismiss this count on the 12(b)(6) for then the affirmative defense would clearly appear on the face of the pleading. The motion to dismiss as to Counts VI and VII must be denied.

### Counts IV and V

#### State Anti-Trust Laws

Defendant argues that since the Federal anti-trust laws do not apply, neither would their state counterparts, La.R.S. 51:121 et seq. For the same reasons we cannot dismiss Counts VI and VII on this motion, neither can we dismiss Counts IV and V.

### Count IX

#### Airport and Airway Development Act of 1970

Defendant claims that Count IX of plaintiff's petition should be dismissed because the Airport and Airway Development Act of 1970 grants no private right of action, directly or impliedly. Plaintiff did not respond to defendant's assertion in its brief and the court was advised at oral argument that plaintiff would abandon this claim. Accordingly, Count IX of plaintiff's complaint will be dismissed.

### Count VIII

#### Airport Development Acceleration Act of 1973

■ Defendant states that Count VIII of plaintiff's petition should be dismissed because the 7% fee charged by defendant is not prohibited by the Airport Development Acceleration Act of 1973 ("ADAA"), 49 U.S.C. § 1513, allegations of plaintiff notwithstanding. It claims that "the only private parties who might have a cause of action under Section 1513 are (1) persons traveling in air commerce, (2) carriers of persons traveling in air commerce, or (3) sellers of air transportation." Defendant's Memorandum at p. 23. Of those categories, plaintiff could only be a member of the second and, defendant states, Congress did not intend for ground transportation services to be included as carriers of persons traveling in air commerce, the only one of the enumerated categories to which it could possibly belong. It claims that "the carriage of persons traveling in air commerce" applies only to carriage of passengers by airplane and that that interpretation of the Act is supported by its legislative history and the case of *Aloha Airlines Inc. v. Director of Taxation of Hawaii*, 464 U.S. 7, 104 S.Ct. 291, 78 L.Ed.2d 10 (1983).

Plaintiff counters that "when the Authority charges a permit fee to Airline, it is as if it were charging a landing fee or charge on the travelers engaged in air transportation who are Airline's customers." Petitioner's Memorandum in Opposition to Defendant's Motion to Dismiss (hereafter "Petitioner's Memo") at p. 26. Plaintiff continues that "[b]y charging Airline fees in excess of the cost of providing Airline the privilege to come to the airport, knowing that Airline will try to pass on these fees to their customers, the Authority is indirectly charging the air traveler," citing *Indianapolis Airport Authority v. American Airlines, Inc.*, 733 F.2d 1262 (7th Cir.1984).

Plaintiff's argument assumes without question that the ADAA applies to fees imposed on providers of ground transportation and does not address the assertion to

the contrary made by defendant. We find that defendant's argument is well founded and so found the Southern District Court of New York in *Salem Transportation Co. of New Jersey, Inc. v. Port Authority of New York and New Jersey,* 611 F.Supp. 254 (S.D.N.Y.1985). In that case, the New York court stated that "[t]he legislative history, as well as the few decisions which address § 1513(a) indicate that congress was concerned with the imposition of a double tax on air passengers traveling in air transportation or air commerce." 611 F.Supp. at 257. It went on to define "air commerce" and "air transportation" as used in the statute as follows:

"Air transportation" means "interstate, overseas, or foreign air transportation or the transportation of mail *by aircraft.*" 49 U.S.C. § 1301(10) (emphasis added). "Air commerce" means "interstate, overseas, or foreign air commerce or the transportation of mail *by aircraft* or any operation or navigation *of aircraft* within the limits of any Federal airway or any operation or navigation of aircraft which directly affects, or which may endanger safety in, interstate, overseas, or foreign air commerce." 49 U.S.C. § 1301(4) (emphasis added). These are the definitions which should be applied to § 1513(a) to determine its parameters. 1973 U.S.Code Cong. & Ad.News 1452; [*Arizona v.*] *Cochise Airlines,* 128 Ariz. [432] at 435, 626 P.2d [596] at 599 [ (App. 1981)].

611 F.Supp. at 257. The court noted that no other form of transportation is mentioned in the definitions and concluded that " 'Congress passed § 1513(a) to deal primarily with local head taxes on airline passengers.' *Aloha Airlines, supra,* 464 U.S. at 13, 104 S.Ct. at 294–295. The section was not passed to prohibit the imposition of fees on ground transportation service." 611 F.Supp. at 257.

The reasoning of the New York court is sound and the history of the statute is clear. It is apparent that this statute was not meant to apply to providers of ground transportation services; accordingly, there appears to be no set of facts which plaintiff could allege and prove which would entitle it to relief under this statute. Dismissal of Count VIII on this 12(b)(6) motion is appropriate.

### Counts X and XI

### Civil Rights Act

Defendant claims that Counts X and XI must be dismissed as neither 42 U.S.C. § 1983 nor 42 U.S.C. § 1985, the statutes under which these counts are raised, creates substantive rights. Plaintiff did not respond to this argument in its memorandum and advised the court at oral argument that it abandoned these claims. Accordingly, these counts will be dismissed.

### Counts II and XII

### Equal Protection

■ Counts II and XII of plaintiff's complaint allege denial of equal protection of the laws as proscribed by the United States and Louisiana constitutions respectively. Plaintiff states that the equal protection guarantee of both constitutions has been violated because it is being treated differently than others whose use of the facility is identical to that of Airline and that there is no rational reason for the dissimilar treatment. More specifically, plaintiff claims that the resolution differentiates between plaintiff's shuttle service and other shuttle services, "identical in their use of airport facilities, operated instead by taxi companies, limosine [sic] companies, hotels, motels, or other commercial carriers" in that "Airline is required to pay seven per cent of its gross receipts, [while] the other shuttle service operators need only pay a lower flat fee or no flat fee at all." Plaintiff's Complaint at ¶ 34. Defendant maintains that plaintiff is not situated similarly with the other services enumerated in its complaint and argues unsupported facts in proof thereof.

Defendant's argument addresses the merits of plaintiff's complaint and not the question of whether it adequately states a cause of action. Whether or not plaintiff is ultimately capable of proving its allegations that (1) it and other shuttle services are similarly situated and that (2) it is

being treated differently than those who are proved to be similarly situated is not before us for our consideration. What is before us is whether the allegations were made, which we find they were. As it does not appear that plaintiff can prove "no set of facts in support of [its] claim which would entitled [it] to relief," *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99 at 102, 2 L.Ed.2d 80 (1957) (footnote omitted), defendant's motion to dismiss these counts must be denied.

### Counts III and XIII

### Due Process

■ By these counts, plaintiff claims that its right to due process of law guaranteed by the federal and state constitutions has been violated. It states that "[t]he Resolution arbitrarily and capriciously, without any reasonable relation to any regulatory power, allows for the discriminatory deprivation of Airline's right to use the common roadways and loading areas of the Airport and attempts to bar or restrict Airline's access to the Airport facilities, especially the public entrance and exit roadways and the public curbside loading zones." Plaintiff's Complaint at ¶ 38. So plaintiff has alleged a right to the facilities as well as an arbitrary and capricious denial of that right by the state regulation complained of, thus it has stated a due process claim.

Defendant claims that it has the authority to totally displace competition and the court finds this assertion well-founded. *See generally City of Walla Walla v. Walla Walla Water Co.,* 172 U.S. 1, 19 S.Ct. 77, 43 L.Ed. 341 (1898); *Toye Bros., Yellow Cab Co. v. Irby,* 437 F.2d 806 (5th Cir. 1971); *Southerland v. St. Croix Taxicab Ass'n,* 315 F.2d 364 (3d Cir.1963); *Park 'N Fly of Texas, Inc. v. City of Houston,* 327 F.Supp. 910 (S.D.Tex.1971). Defendant further claims that, since it has the right to displace competition on its premises, plaintiff could not possibly have any "right" to conduct business thereon.

In response to the motion, plaintiff claims that a state may not validly change a "quasi-contractual relationship between a state and a particular party." Petitioner's Memo at p. 23. Plaintiff apparently contends that its "right" which was modified without due process was the "right" to use the airport premises without being "forced to enter into a contract with the Authority on pain of effective termination of their business." Petitioner's Memo at p. 22. So apparently the quasi-contractual relationship which plaintiff states cannot be changed is the relationship which allows it to operate without a contract or, stated another way, a quasi-contract not to contract.

Not surprisingly, plaintiff has not cited any authority for its novel theory of what right it has that has been modified by state action. Its assertions to the contrary notwithstanding, we cannot see where plaintiff could have any "right" to operate on the airport premises without a contract when a plethora of case law maintains that the Authority could, if it so desires, ban it from operating there all together and awarding an exclusive contract to provide this type of service to another. It appears abundantly clear that plaintiff will be unable to prove any set of facts in support of its claim that it had a right to operate its business on airport property. Therefore, these counts must be dismissed.

### Count XIV

### Louisiana Airport Authorities Law

■ Plaintiff claims that the Resolution adopted by the Authority is null and void as it violates the Louisiana Airport Authorities Law, La.R.S. 2:601 et seq. In particular it asserts that "the Authority's adoption of the Resolution constitutes a deprivation of Airline's right of access to the Airport and the public's rightful, equal, and uniform use of airline's rental car service." Plaintiff's Complaint at ¶ 88.

The particular article which plaintiff claims has been violated is La.R.S. 2:605 which provides as follows:

A. In connection with the operation of an airport or air navigation facility controlled by an authority, the authority may enter into contracts, leases, and oth-

er arrangements with any persons (1) granting the privilege of using or improving the airport or air navigation facility or any portion or facility thereof or space therein for commercial purposes; (2) conferring the privilege of supplying goods, commodities, things, services, or facilities at the airport or air navigation facility; and (3) making available services to be furnished by the authority or its agents at the airport or air navigation facility.

B. In each case the authority may establish the terms and conditions and fix the charges, rentals, or fees for the privileges or services, which shall be reasonable and uniform for the same class of privilege or service and shall be established with due regard to the property and improvements used and the expenses of operation to the authority; provided that in no case shall the public be deprived of its rightful, equal and uniform use of the airport, air navigation facility, or portion of facility thereof and provided further, that no exclusive concession or exclusive license or lease agreement shall be made relating to the business of servicing, repairing, or furnishing of supplies for aircraft, nor shall any government owned or operated enterprise or activity involving or relating to said business purposes be conducted on or in connection with such airport or air navigation facilities. All such public airports and facilities shall be accessible, without charge, to concessionaires, licensees, lessees and to their employees, agents and suppliers, and the total consideration payable under the concession or agreement, involving or relating to the business of servicing, repairing, or furnishing of supplies for aircraft, shall be computed on the same basis of a flat rental for the space so occupied or leased.

Defendant maintains that plaintiff does not have a right of access to the airport for the same reasons that it had no right that could be improperly altered under the due process claim. The court agrees with this reasoning and finds further support in this contention by reviewing the quoted statute to ascertain that it conveys no rights to plaintiff. This portion of plaintiff's argument cannot be sustained.

Plaintiff's other argument, that the resolution constitutes a deprivation of the public's "rightful, equal and uniform use of Airline's rental car service" is equally without merit. As is pointed out by defendant, the quoted statute guarantees equal and uniform use of "the airport, air navigation facility, or portion of facility thereof," and not equal and uniform use of plaintiff's services. Additionally, it seems doubtful that plaintiff would have any standing to assert the deprivation of rights granted to the public at large. Plaintiff has not alleged a special interest which is separate and distinct from the interest of the public at large that would allow him to proceed under this theory. *See generally League of Women Voters of New Orleans v. City of New Orleans*, 381 So.2d 441 (La.1980) and cases cited therein ("A plaintiff must have a real and actual interest in the action he asserts.... Without a showing of some special interest in the performance sought of a public board, officer or commission which is separate and distinct from the interest of the public at large, plaintiff will not be permitted to proceed." 381 So.2d at 447 (citations omitted)). Therefore, defendant has failed to state a claim in that respect.

Plaintiff also quotes that section of La. R.S. 2:605 which states that "the total consideration payable under the concession or agreement, involving or relating to the business of servicing, repairing, or furnishing of supplies for aircraft, shall be computed on the same basis of a flat rental for space so occupied or leased." It concludes that, as a sublessee (it pays a monthly fee to Kall Board, asserted to be a lessee to the Authority, for the privilege of maintaining a phone line in the terminal), it is being denied the privilege of having a flat fee charged instead of a percentage of gross receipts. Defendant correctly points out in its memorandum that the flat rate to which this section refers is applicable only to businesses which service, repair, or furnish supplies to aircraft. Plaintiff engages in no such operation.

As plaintiff has made no other allegations which, if proven, would entitle it to relief under this statute, this Count must be dismissed.

### Count XV

### Tortious Interference With Airline's Business

■■■ Plaintiff alleges in its complaint that the defendant "intentionally and unjustifiably sought to impede Airline's ability to transport its customers between the Airport and airline's business offices." Plaintiff's Complaint at ¶ 94. In response to this, defendant claims that it owes no duty to plaintiff to do business; therefore, there can be no breach of duty which would sustain a claim in tort.

In *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594 (5th Cir.1981), the court stated that "[t]he Louisiana Supreme Court has recognized a cause of action arising under [Louisiana Civil Code] article 2315 for tortious interference with business. *Graham v. St. Charles St. Railroad*, 47 La.Ann. 1656, 18 So. 707 (1895)." 660 F.2d at 601. The court continued to set forth the elements of a cause of action for tortious interference with business as follows:

> An individual, regardless of his motive, has an absolute right to refuse to deal with another.... The right to influence others not to deal, however, is not as broad.... In that situation, Louisiana law protects the businessman from "malicious and wanton interference", permitting only interferences designed to protect a legitimate interest of the actor....
>
> ... [Plaintiff] need only show that [defendant] improperly influenced others and not that others agreed with [defendant]. [Plaintiff] has already alleged that as a result of [defendant's] actions, others did not deal with him. But he must also establish that the interference was improper.... [Defendant] is correct in its contentions that the plaintiff has not alleged malice and that malice is a necessary element of the cause of action.

660 F.2d at 601–02 (footnotes omitted) (citations omitted).

In this case, plaintiff has failed to allege that defendant acted with malice. Accordingly, plaintiff has failed to state a claim for tortious interference with business and we must dismiss this count. If plaintiff is able to plead in good faith and within the confines of Rule 11 of the Federal Rules of Civil Procedure facts which would prove this element, it will be allowed to amend its complaint within fifteen (15) days of the date of the order which accompanies this ruling without leave of court. If plaintiff does not so amend within fifteen (15) days of the date of that order, this Count will be deemed to have been abandoned by plaintiff.

### CONCLUSION

For the foregoing reasons, an order is issued herewith denying defendant's motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure insofar as it requests dismissal of Counts I, II, IV, V, VI, VII, and XII of plaintiff's complaint. The motion will be granted insofar as it seeks dismissal of Counts III, VIII, IX, X, XI, XIII, and XIV of plaintiff's complaint. Insofar as the motion pertains to Count XV of plaintiff's complaint, plaintiff will be allowed to amend its complaint within fifteen (15) days of the date of the order which accompanies this ruling without leave of court if it is able to plead in good faith and within the confines of Rule 11 of the Federal Rules of Civil Procedure facts which would prove that defendant acted with malice when it allegedly interfered with plaintiff's business so as to properly state a claim under Louisiana Civil Code article 2315.